## DENSON & WIFE VS. THOMPSON.

A deed of gift of slaves to a married woman, for her use, etc., for her natural life, with remainder to the *heirs of her body*, vests in her the absolute title, and the slaves pass to her husband.

*Appeal from the Circuit Court of Ashley county in Chancery.*

The Hon. THEODORIC F. SORRELS, Circuit Judge.

PIKE & CUMMINS, for the appellant.

YELL and WILLIAMS & WILLIAMS for the appellees.

Mr. Chief Justice ENGLISH delivered the opinion of the Court.

On the 28th of September, 1852, Elizabeth Thompson, wife of John N. Thompson, by her next friend Edgar A. M. Gray, filed a bill in the Ashley Circuit Court against her husband, and Esther Thompson, widow of her deceased son, Robert A. Thompson, for the recovery of two slaves and their hires, etc.

The bill alleges that on the 18th of February, 1807, the complainant, Elizabeth, intermarried with the defendant John N. Thompson, in Robertson county, North Carolina. That afterwards, in the year 1810, her father Thomas Sewell, then living there, by deed gave to complainant three slaves, Joe, Lucy and Clarinda, with the future increase of the two latter named, for the use and assistance and comfort of complainant for the term of her natural life, with limitation after her death to the heirs of her body; and placed the said slaves in the possession of her husband for the use and benefit of complainant, and the other uses and purposes expressed in the deed. After this, they re-

moved to Twiggs county, Georgia, taking the slaves with them, where complainant repeatedly requested her husband to have the deed recorded in the proper office, as evidence to the world of her title to the slaves, but he absolutely refused, and never did procure it to be recorded. That in the year 1837, complainant was taken sick, and her life despaired of; and on her recovery the deed was not to be found in the place where she had deposited it, nor did she afterwards see it, or know what became of it, although she believed that her husband destroyed it, or procured or permitted it to be destroyed.

That in the year 1844, John N. Thompson and complainant emigrated to this State, but before they reached here, the said John N., made to his son Robert A. Thompson, who was well acquainted with the premises, a bill of sale for three slaves, the said Joe, and two others Luke and Dave, which last two were the offspring of said Clarinda, without the consent of complainant, and, as she was informed and believed, without any consideration whatever being paid by the said Robert A.

That Robert A. Thompson came to this State at the same time complainant and her husband, the said John N., did; and in a short time after their arrival here, the said Robert A. delivered up to complainant the slave Joe, but retained Luke and Dave in his possession until his death in 1851. After which the defendant Esther, his widow, still retained possession of the slaves, and refused to deliver them to complainant, or to her husband, the said John N., for her use and benefit, in accordance with the intention of the father of complainant. That she was aged and infirm, and needed the assistance of the slaves, etc.

Prayer that defendant Esther be compelled to deliver up the slaves Luke and Dave to defendant John N. Thompson, and account to complainant for the hire thereof, etc., for six years, and that the said John N. be compelled to permit complainant to have the use and benefit of their services for her comfort and support: also that a trustee be appointed to take charge of the slaves until the determination of the suit, etc.

The defendant John N. Thompson made default, and the bill was taken as confessed as to him.

The defendant Esther Thompson answered the bill. She had no knowledge of the alleged deed of gift, or that Luke and Dave were the sons of Clarinda, as stated in the bill, and demands proof thereof, etc.

She avers that on the 16th December, 1841, her husband, Robert A. Thompson, purchased the slaves, Joe, Luke and Dave, of John N. Thompson in good faith for the consideration of $1,600, in hand paid, etc., and took a bill of sale therefor, which is exhibited. That from thenceforward until his death, 28th March, 1851, the said Robert A. held peaceable, continuous, and adverse possession of the slaves Luke and Dave as his own property. That after his death respondent administered upon his estate, and continued so to hold the slaves until the filing of the bill. She pleads the limitation act of 19th December, 1846, (*Digest ch.* 153, *p.* 943,) as a bar to the relief sought by the bill, etc.

She also submits that complainant had made no case for relief upon the face of her bill, and reserves the benefit of a demurrer thereto, to the hearing.

After the answer was filed, she intermarried with Reuben G. Denson, who succeeded her in the administration of the estate of her former husband, and was made a party to the bill.

The cause was finally heard upon the pleadings and evidence at April Term, 1855; and a decree rendered in favor of complainant against Denson and wife for the slave Dave, and hire from the commencement of the suit: and for the hire of Luke from the same period to his death, he having died during the progress of the cause.

Denson and wife appealed.

1. The counsel for the appellants insist that upon the face of the bill, admitting its allegations to be true as upon demurrer, it does not appear that the appellee had any estate in the slaves separate and apart from her husband.

The original deed of gift of the slaves from Thomas Sewell

to his daughter Elizabeth, the appellee, being lost or distroyed, as alleged, and no copy thereof having been exhibited, we must determine the character of the instrument and its legal effect from the allegations of the bill as to its provisions.

The only allegations attempting to describe the contents of the deed, are as follows:

" After her marriage, and in the year 1810, her father, Thomas Sewell, late of, etc., by deed gave unto your oratrix three negro slaves, to wit: Joe, Lucy and Clarinda, together with the future increase of the said Lucy and Clarinda, for the use, aid, assistance and comfort of your oratrix for the term of her natural life, with limitation after her death to the *heirs of her body*."

In *Moody vs. Walker*, 3 *Ark.* 188, and *Maulding vs. Scott*, 13 *Ib.* 91, this Court said, in the language of Chancellor KENT, 2 *Com.* 354, that it is a settled rule that the same words which, under the English law, would create an estate tail as to freeholds, give the absolute interest as to chattels.

In the case of *Maulding vs. Scott*, the words were: " I also bequeath to my daughter Sucky Mills, my negro girl Cynthia, to be enjoyed by her during her life time, and then to descend to her lawful heirs, together with Cynthia's increase, should she have any"—and the Court held that the words here used vested in Sucky Mills an absolute title to the slaves, and she being a married woman, it passed to her husband.

According to this decision, the alleged words of the deed of gift now before us, manifestly vested in the appellee an absolute title to the slaves, the words " *heirs of her body*," being appropriate words of limitation, and commonly used for the creation of an estate tail, etc.; and it not appearing from the allegations of the bill that there were apt words employed in the deed to exclude the marital rights of the husband, (*Sadler vs. Bean and wife*, 4 *Eng. R.* 204,) the slaves passed to him. See also *Lindsay vs. Harrison*, 5 *Eng. R.* 301; *Roane Ex. vs. Rives*, 15 *Ark.* 328.

It follows that the appellee had no title to the slaves, and there was no equity upon the face of her bill.

This disposes of the case, and it is not necessary to determine

70          CASES IN THE SUPREME COURT

the questions as to the statute of limitations, fraudulent purchases, trusts, ets., discussed by the counsel, and which might have arisen upon the voluminous evidence in the cause, had the appellee, by the allegations of her bill, shown a separate title to the slaves, so as to have escaped the demurrer interposed by the answer, and reserved to the hearing.

The decree of the Court below is reversed, and the cause remanded with instructions to dismiss the bill for want of equity, etc.