## VAUGHAN AD. VS. PARR.

The will of Mary C. contained a clause as follows: "I give and bequeath, for the separate and exclusive use and benefit of Sarah Coor, one negro girl named *Jenny*, etc., so that the same shall not be subject to the control of her husband, etc.; and it is my will and desire that my executors cause the said property so to be settled that my said daughter shall have the benefit thereof, clear from the control and debts or engagements of her husband during her life, and, at her death, that the said property be settled on the children she may have surviving her:" *Held*, that it was the intention of the devisor, as indicated in the language employed in the bequest, to vest in her daughter, *Sarah*, a separate life estate in the slave, *Jenny*, remainder to her surviving children, and that such was the effect of the will:

That apt words being used to exclude the marital rights of the husband, the words "*children she may have surviving her*," when construed in connection with other expressions contained in the bequest, were words of purchase and not of limitation.

On the death of the tenant for life (Sarah C.), her two surviving children were entitled to the slave and her increase, under the will, as tenants in common—if they had not previously disposed of their interests in the property.

One of her children, a female, dying before her husband reduced her interest in the property into possession, her administrator was entitled to recover it, for the benefit of her heirs, etc.

A suit brought within five years from 19th December, 1846, was not barred by the act of that date (*Gould's Dig., chap.* 162, *Art.* 1, *sec.* 4.) prescribing the period of limitation to actions for slaves, etc. The act had no retroactive operation.

Until the death of Sarah C., the tenant for life, her daughter had no right of action for her interest in the slave and her increase, and the statute of limitation of three years (*Gould's Dig., chap.* 106, *sec.* 10,) could not begin to run until the cause of action accrued—nor then as against her, she being a married woman, and there being a saving in the statute in her favor.

Where there is a conflict in the testimony of witnesses, who are alike unimpeached, and have equal opportunities of obtaining information, etc., the testimony of the greater number must prevail.

Modern decisions have established the rule that an infant's contracts are none of them absolutely void, that is, so far void that he cannot ratify them after he arrives at the age of legal majority

Where an infant has executed a bill of sale for slaves, he may ratify the contract of sale after he is of full age, and this by parol.

The mere fact that an infant does not disaffirm a contract after he attains his majority, is not, it would seem, of itself a confirmation, but this fact may be made significant by circumstances.

There are cases in which it has been held that even a silent acquiescence for a considerable length of time by an infant, after arriving at full age, is itself a ratification of his conveyance—and especially where he looks on and permits the purchaser to make improvements.

Where a female infant made an improvident sale of her remainder interest in a slave, and was a married woman at the time of the death of the tenant for life, and so continued until her own death, the mere failure to assert her title to the slave, while laboring under the disabilities of coverture, etc., for a number of years, was not an implied ratification of such improvident contract of sale made in her infancy.

Though she did not disaffirm the contract during her life, her administrator could do it for her.

*Appeal from Ouachita Circuit Court in Chancery.*

Hon. ABNER A. STITH, Circuit Judge.

FOWLER & STILLWELL, for the appellant.

For the appellant we make the following points:

That Sarah Coor took a life estate only in the woman. 23 *Wend. Rep.* 452; 3 *Murph. (N. C.) Rep.* 549; 1 *Dess. Rep.* 253; 14 *Ark.* 607.

Appellant's intestate and her brother, Council B., took the remainder. 1 *Bay's Rep.* 457; 1 *Dess. R.* 271; 2 *McCord's R.* 440; 4 *John. Rep.* 61; 3 *Barb. S. C. R.* 387.

The remainder-man's rights could not be cut off by the acts of the tenant for life, or executor. 1 *Dev. & Batt. Eq. Rep.* 460.

Appellant's intestate and Council B. took under the will, and not as heirs, etc., of their mother. 7 *Cranch Rep.* 456.

If the bill of sale was not void, but merely voidable, it is well settled that the appellant, as administrator, has a right to avoid it. 1 *Parson's on Con.* 275, 276; *Parsons vs. Hill,* 8 *Mo.*

38

*R.* 136; *Bingham's Law of Infancy* 55; 8 *Humph.* 446; 10 *Mass.* 137; 11 *Ib.* 150; 8 *Metc. R.* 196; 6 *Ala. Rep.* 544.

The right of action accrued upon the death of Sarah Coor in 1843, and the statute did not begin to run till then. 4 *J. R.* 402; 5 *Cowen* 74. And the intestate being a *feme covert* at the time of her mother's death, under the statute then in force, she had five years after discoverture to bring suit. And her administrator had the same time in which to bring this suit. 16 *Ark.* 160; 12 *Iredell L. Rep.* 150; 2 *Penn. R.* 122; 4 *Denio Rep.* 201; 9 *Humph. Rep.* 164; 3 *Marsh.* 319; 14 *Ark.* 605.

WATKINS & GALLAGHER, for the appellee.

Sarah Coor took the absolute estate in the slave. Parr's title is good from her. The limitation over to the children was void, because the whole estate was first given to the mother.

If the children had the reversion in the slave, Parr's title is good, because they sold to him after they were of full age.

And if they were not of full age, they lost all right by their laches—the statutes of limitation a good bar—and the whole matter stale.

Parr's purchase from Stockard was good, because, even if the children were not of age when they sold to Stockard, to defeat that title, it must be shown, after this lapse of time, that their conveyance to Stockard has never been ratified.

Mr. Chief Justice ENGLISH delivered the opinion of the Court.

On the 15th day of February, 1851, James Vaughan, as administrator of Kitsey Ann Reiley, deceased, filed a bill against Wm. Parr, in the Ouachita Circuit Court, for injunction, etc., and for the recovery of a slave named Jenny, and her children, eight in number, with hire, etc.

The cause was heard upon the pleadings and evidence, at the October term, 1856, the bill dismissed for want of equity, and Vaughan appealed.

The title of complainant's intestate is derived as follows:

In the year 1824, Mary Croom, of Wayne county, North Carolina, made her will, which contained, among others, the following clause:

" I give and bequeath for the separate and exclusive use and benefit of Sarah Coor, one negro girl, by the name of Jenny, and one cow and calf, so that the same shall not be subject to the control of her husband, the following property, to-wit: and it is my will and desire that my executors cause the said property so to be settled that my said daughter shall have the benefit thereof, clear from the control and debts or engagements of her huband, during her life, and, at her death, that the said property be settled on the children she may leave surviving her."

It seems that the will was admitted to probate in August, 1824, and that one of the executors named therein qualified as such.

At the time the will was made *Sarah Coor* was the wife of *Stephen Coor*, and they resided in Wayne county, N. C. Said Stephen was largely in debt, and insolvent. Before the death of Mrs. Croom, she put the slave *Jenny*, named in the will, into the possession of her daughter, *Sarah Coor*, and her executor, after her death, did not take the slave out of the possession of *Mrs. Coor*, but permitted her and her husband, about the year 1824, when they removed to Tennessee, to take the slave with them.

*Sarah Coor* died in Hickman county, Ky., in July, 1843, leaving but two children, Council B. Coor, a son who died intestate, and without issue, in March, 1846; and *Kitsey Ann*, complainant's intestate, who survived her brother.

Kitsey Ann intermarried with James M. Reily, in November, 1835, and died, the bill alleges, in 1850, leaving her husband and four children surviving her. During her coverture, her husband took no steps to obtain possession of the slaves in controversy—they being all the time in the adverse possession of defendant Parr, etc.

There can be no doubt, from the language employed in the

bequest above copied, that it was the intention of Mrs. Croom to vest in her daughter, Mrs. Coor, a separate life estate in the slave *Jenny*, remainder to her surviving children; and such, it must be held, was the effect of the will.

Apt words are used to exclude the marital rights of the husband, and the words, " *children she may leave surviving her*," when construed in connection with other expressions contained in the bequest, are clearly words of purchase, and not of limitation. See *Denson & Wife vs. Thompson*, 19 *Ark*. 66; 4 *Kent* 228; *Swain vs. Roscoe*, 3 *Iredell* 200; *Dudley vs. Mallory*, 4 *Geo. R.* 61; *Reeve's Dom. Rel.* 465.

On the death of Mrs. Coor, her two children, *Council B*. and *Kitsey Ann*, were entitled, under the will, to the slave, as tenants in common.

On the death of Council B., his sister succeeded to his interest (if he had not previously disposed of it).

*Kitsey Ann* dying before her husband reduced the property to possession, her administrator was entitled to recover it for the benefit of her heirs, etc. (if her title remained undivested at the time of her death.)  *Cox et al. vs. Morrow*, 14 *Ark*. 604.

Having thus shown the grounds on which the complainant seeks to recover *Jenny*, and her increase, we will next examine the right by which the defendant claims to hold the slaves. He was, it appears, in the adverse possession of *Jenny* from the year 1828, and of her children from their births, to the time the bill was filed, and he claims to hold them by virtue of the statutes of limitation.

He can derive no benefit from the act of 19th December, 1846, (*Gould's Dig., chap.* 162, *Art.* 1, *sec.* 4,) because this suit was commenced before the expiration of five years (the period of limitation prescribed by it) from the passage of the act; and the statute has no retroactive operation.

Nor can he derive any benefit from the three years act of limitation, (*Gould's Digest, chap.* 106, *sec.* 10,) as against complainant's intestate, because she had no right of action until

after the death of her mother, (the tenant for life,) who did not die until July, 1843; and the statute of limitations could not begin to run until the cause of action accrued. And because moreover, she was a married woman when her mother died, and so continued until her own death, in 1850, and there was a saving clause in the statute in favor of *femes covert*. See *Revised Statutes, chap.* 91, *sec.* 13; also, *Gould's Digest, chap.* 106, *sec.* 16. The statute did not, therefore, begin to run against her during her lifetime.

Parr also claims that he purchased *Jenny* from *Mrs. Coor*, and her two children, *Council B.* and *Kitsey Ann* in the year 1828.

The bill alleges this purchase to have been fraudulent, without consideration, and to have been made when *Council B.* and *Kitsey Ann* were minors, and incapable of contracting, etc.

The answer denies the alleged fraud, want of consideration and minority of parties; and alleges that the purchase was a fair one, upon a good and sufficient consideration, (setting out what it was,) and that if the parties were minors at the time of the purchase, they ratified it, after their majority, by many years of acquiescence, etc.

It seems, from the papers produced on the hearing, that on the 5th of July, 1828, (in Murry county, Tennessee, where the parties all resided at that time,) *Stephen Coor*, his son, *Council B.*, and daughter, *Kitsey Ann*, jointly executed to James Stockard, a bill of sale for the slave *Jenny*, for the recited consideration of $207—Jenny being at that time about 15 years of age.

That on the 21st day of October, 1828, *Stockard* executed to the defendant, Parr, a bill of sale for *Jenny*, reciting $300 as the consideration.

That on the 28th of October, 1828, *Sarah Coor*, *Council B.* and *Kitsey Ann* executed to Parr a bill of sale, under seal, for Jenny, reciting $300 as the consideration, and warranting the title, etc., as did the other bills of sale.

The version which Parr gives of these transactions, in his answer, is, in substance, as follows:

In the spring of 1828, *Stephen Coor* purchased of Parr, who was distilling, whiskey to the value of $70, it being understood that said *Stephen* and his *son Council B.* were doing business together. They failing to pay for the whiskey, Parr sued *Stephen* alone, obtained judgment, and caused an execution to be levied on *Jenny*. Stockard paid Parr the debt and costs, and, by way of reimbursing him, and also in consideration of provisions, clothing, medicine, etc., furnished by him to Stephen Coor and family, said *Stephen*, *Council B.* and *Kitsey Ann* sold to Stockard the girl *Jenny*, and executed to him the first bill of sale above referred to.

Shortly after, Parr sold to *Stockard* a tract of land for $800, took *Jenny* in part payment, and obtained from him the second bill of sale above referred to.

In the summer of 1828, *Stephen Coor* died, and shortly thereafter, *Sarah Coor*, his widow, called on Parr and told him that *Jenny* belonged to her as her separate property for life, and after her death to her children *Council B.* and *Kitsey Ann*, and desired to purchase the slave back on a credit. Parr refused to sell his right to *Jenny* on a credit, but offered to sell for cash, which *Mrs. Coor* declined to give. He then pressed her to sue for the slave, in order that he might have recourse on Stockard; which she would not do. He then proposed to her, that inasmuch as she and Council B. admitted that the family was indebted to *Stockard* in about the sum of $225, for money advanced, supplies, etc., which had been paid by transferring Jenny to him, and as she was not worth more than $300, if *Mrs. Coor*, *Council B.* and *Kitsey Ann* would execute to Parr a bill of sale for Jenny, he would give them a horse worth $70 or $75; to which they all three severally consented, he delivered to them the horse, and they executed to him the third bill of sale above referred to.

One witness states that *Council B.* and *Kitsey Ann* had nothing to do with the sale of *Jenny* to Parr, but were opposed

to it. After the sale was made, he thinks, they were persuaded, by their mother and Parr, to sign the bill of sale—Parr said if they did not sign it, he would run the girl off. By the persuasion of their mother, and the threats of Parr, witness thinks, they were induced to sign the bill of sale.

The depositions read upon the hearing, prove conclusively, we think, that on the 28th of October, 1828, the date of the bill of sale from Mrs. Coor and her two children to Parr, Council B. was above the age of twenty-one years, and competent to dispose of his interest in the slave. He was no doubt of age, also, when he executed the bill of sale to *Stockard*.

The allegations of fraud in the transaction made by the bill, are not sufficiently sustained by the depositions to overturn the positive sworn denial of the answer.

We must therefore hold that Parr purchased of *Council B.* a valid title to his interest in the slave *Jenny*, and her increase.

The depositions of five witnesses conduce to prove that *Kitsey Ann* was a minor on the 28th of October, 1828, when she joined with her mother and brother in executing the bill of sale of that date to Parr. The testimony of two witnesses conduces to prove that she was of age. None of the witnesses were impeached, the means of information of the five appear to have been as favorable as that of the two, and under such circumstances, the testimony of the greater number must prevail. According to the weight of evidence she was born about 1810 or 1811.

Shortly after the execution of the bill of sale, and about the month of January, 1829, Parr moved from Murry to Giles county, Tennessee, where he resided until about the year 1837, when he removed to the western district, and finally, it seems, to Ouachita county, in this State, having *Jenny* and her children openly in his possession, etc.

It appears, that about the year 1831, Mrs. Coor and her two children, moved to Hickman county, Kentucky, where she died in 1843, and her son, Council B., in 1846; and where *Kitsey Ann* intermarried with Reiley, in November, 1835. None of them

returned to Tennessee. Mrs. Reiley died in Missouri, where, it was proven, she was residing in 1846 and 1847.

The contract of sale by which *Kitsey Ann* disposed of her interest in *Jenny* to Parr, was, under the circumstances disclosed in the record, prejudicial rather than beneficial to her. It was an improvident sale of a legacy left her by her grandmother, and belonged, perhaps, to that class of contracts of infants, which were formerly treated as absolutely null and void. Modern decisions, however, have established the rule, that an infant's contracts are none of them absolutely void, that is, so far void that he cannot ratify them after he arrives at the age of legal majority. 1 *Parsons on Cont.* 244, *and notes.*

It was, doubtless, competent for *Kitsey Ann* to ratify the contract of sale in question, after she was of full age, and this by parol. *Ib.* 269.

The mere fact that an infant does not disaffirm a contract after he attains his majority, is not, it would seem, of itself, a confirmation, but this fact may be made significant by circumstances. *Ib.* 271.

There are cases in which it has been held that even a silent acquiescence for a considerable length of time, by an infant, after arriving at full age, is itself a ratification of his conveyance, and especially where he looks on and permits the purchaser to make improvements, etc. *Ib.* 273, *and notes.*

In this case there is no evidence that *Kitsey Ann*, after she was of age, ever did an act, or made any declaration confirmatory of the contract.

Two witnesses testify that they heard her and Council B. speak of the purchase of the slave by Parr, and say that they were dissatisfied with it, and that he had given them a horse to relinquish their interest, etc. But the witnesses did not state when these declarations were made, and it is inferable from their statements that they were made about the time of the sale.

It is insisted by the counsel for the appellee, that Kitsey Ann ratified the sale by long acquiescence, that the demand is a

stale one, and that a court of equity ought not to entertain the claim of her administrator to the slave, and her increase, etc., after the lapse of so many years. If *Kitsey Ann* had been in a condition to assert her claim to the slave, after she became of age, and had labored under no subsequent disability, there would have been much plausibility in the argument. But the life estate of her mother did not terminate until July, 1843, until which time she could not legally assert any right to the slave—indeed, until then, her right was contingent upon her surviving her mother, under the provision of the will of her grand mother. And from the death of her mother until her own death, she labored under the disabilities of coverture.

Under these circumstances, it would be extending the rule further than the authorities warrant to hold that mere *inaction* on her part, for the time referred to, long as it certainly was, amounted to the *ratification* of an improvident contract of sale made in her infancy.

Though she did not disaffirm the contract during her lifetime, her administrator could do it for her. 1 *Parsons* 276.

It follows that the decree of the Court below must be reversed, and the cause remanded with instructions to the Court to reinstate the bill; and decree to the appellant, in his representative capacity, one-half of the slaves in controversy, and one-half of the reasonable value of their hire from the time of the death of *Sarah Coor*, the tenant for life, making a just allowance in favor of the appellee for his care, trouble and expense of raising the young negroes, etc.

Absent, Mr. Justice RECTOR.