Ray EDWARDS and Louise Edwards, His Wife, Individually, and on Behalf of a Class Similarly Situated, Plaintiffs,

v.

ARKANSAS POWER & LIGHT COMPANY, Defendant.

No. B–C–80–37.

United States District Court, E. D. Arkansas, N. D.

July 16, 1981.

Bill Bristow, Seay & Bristow, Jonesboro, Ark., Steven L. Bell, John Norman Harkey, Batesville, Ark., for plaintiffs.

House, Holmes & Jewell, Little Rock, Ark., for defendant.

## MEMORANDUM OPINION

HOWARD, District Judge.

Arkansas Power & Light Company (AP&L), the defendant, is a corporate entity and a public utility whose resources are devoted exclusively for generating, transmitting and supplying electric power for domestic and industrial consumption.

Under Arkansas law—Ark.Stat.Ann. §§ 35–302 and 73–276.15 (Repl.1979)—AP&L possesses the power of eminent domain and, accordingly, has the right to con-

demn private property for the purpose of "constructing electric generating plant sites, substation sites, compressor substation sites and meter station sites" conditioned upon the payment of just compensation.

On October 20, 1978, AP&L instituted an action in the Circuit Court of Independence County, Arkansas, to condemn several tracts of land owned by plaintiffs, Ray Edwards and Louise Edwards, husband and wife, for the purpose of constructing an electric generating plant, an associated fuel supply facility and transmission lines.[1] In order to gain immediate possession of plaintiffs' property, AP&L deposited in the registry of the Independence Circuit Court, pursuant to court order, the sum of $136,000.00 which was to remain on deposit pending resolution of the issue of just compensation by a jury trial. The amount of the deposit was based upon AP&L's estimation and declaration to the Independence Circuit Court that just compensation for plaintiffs' lands was $850.00 per acre. AP&L's appearance before the state court for an order authorizing immediate entry upon plaintiffs' lands was *ex parte*.[2]

On October 31, 1978, plaintiffs filed their answer which was essentially a general denial and requested a jury trial on the question of just compensation.

On October 10, 1979, plaintiffs filed their amended answer and counterclaim alleging, among other things, that AP&L had failed to exercise good faith in estimating the value of plaintiffs' lands at $850.00 per acre, when AP&L knew or should have known that plaintiffs' lands were worth $1,650.00 per acre; that at the time, AP&L had settled other cases involving lands similar to plaintiffs' property at a value of $1,650.00 per acre; and that subsequently to the actual taking of plaintiffs' lands, but prior to a trial on the question of just compensation, AP&L was advised by its own witnesses that plaintiffs' land had a fair market value of $1,650.00 per acre. Plaintiffs further alleged, in their counterclaim, that in view of the statutory authority granting AP&L the power of eminent domain, AP&L is an arm of the State, and this plus the superior position AP&L enjoys because of the expertise it possesses in land condemnation matters, AP&L was under a duty to act in good faith in estimating the fair market of plaintiffs' property to the state court; that as a consequence of AP&L's indifference to plaintiffs' property interest, plaintiffs were compelled to employ the services of an attorney in order to establish the fair market value of their lands; and that AP&L had benefited economically, or been unjustly enriched, by making use of the difference between the deposit of $136,000.00 and the jury's award of $206,000.00.

Plaintiffs further asserted in the state court proceedings that they should have judgment against AP&L in the sum of $60,000.00 for actual damages and $250,000.00 as exemplary damages because of defendant's reckless "indifference and/or disregard to the property rights of the defendants", plaintiffs herein.

On October 24, 1979, a jury returned a verdict in behalf of the plaintiffs finding that plaintiffs' property had a fair market value of $1,700.00 per acre. However, pursuant to motion of AP&L, the verdict was set aside and AP&L was granted a new trial. On July 23, 1980, a second jury awarded plaintiffs the sum of $2,050.00 per acre for 167.25 acres of land and the sum of $816.67 per acre for an additional forty (40) acre tract of plaintiffs' land. On August 12, 1980, a judgment was entered of record by the state court on the jury's verdict.

---

1. Plaintiffs' property represented only a fractional part of hundreds of acres of land that AP&L sought in connection with its expansion project in Independence County, Arkansas. Condemnation proceedings were instituted only when AP&L was unable to negotiate a purchase of the property from the owners.

2. Ark.Stat.Ann. § 35–314 (Repl.1962) provides: "Effect of making deposit.—Whenever such deposit shall have been made in compliance with the order of the court, or judge, it shall be lawful for such corporation to enter upon such land and proceed with its work, through and over the lands in controversy, prior to the assessment and payment of damages for the use and right to be determined as aforesaid."

By stipulation of the parties, the issues raised by plaintiffs' counterclaim in the state court were not tried to the jury either on October 24, 1979, or July 23, 1980. These issues were bifurcated and were to be tried at a later date. However, on August 12, 1980, plaintiffs moved for a voluntary nonsuit of their counterclaim and accordingly, the Circuit Court of Independence County dismissed plaintiffs' federal constitutional claim without prejudice.

On September 2, 1980, plaintiffs filed this action asserting the following jurisdictional grounds:

3. This action arises under the United States Constitution, particularly under the provisions of the Fifth and Fourteenth Amendments to the United States Constitution, and under the laws of the United States, particularly under the Civil Rights Act, Title 42 of the United States Code, Sections 1983 and 1988.[3]

This proceeding is on AP&L's motion to dismiss plaintiff's complaint, asserting, *inter alia*, that the Independence Circuit Court's judgment is *res judicata*.

The pivotal issue is whether this Court can properly entertain plaintiffs' § 1983 action in view of the fact plaintiff had an available forum, in the Independence Circuit Court proceeding, for raising the federal constitutional issues sought to be litigated here. The Court is persuaded that the answer is in the negative and, accordingly, AP&L's motion to dismiss is granted.

■ It is settled that issues litigated, or could have been litigated in a proceeding, may not be raised in a second proceeding arising out of the same cause of action and involving the same parties or their privies. *Robbins v. District Court of Worth City, Iowa*, 592 F.2d 1015 (8th Cir. 1979). In order to avoid the application of the principles of *res judicata*, in a second proceeding, such as we have here, a plaintiff must come within the exception to the rule by demonstrating that either state law did not provide a fair and reasonable procedure for the litigation, as here, of the federal constitutional claim, or the state forum failed to recognize the constitutional theory on which the litigant based his claim of deprivation of his federal rights. *Allen v. McCurry*, 449 U.S. 90, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980).

■ It is clear that *res judicata* applies to an action brought under Title 42, Section 1983. *Allen v. McCurry*, supra, *Robbins v. District Court of Worth City, Iowa*, supra.

In articulating the application of principles of *res judicata* to a § 1983 proceeding, the United States Supreme Court observed in *Juidice v. Vail*, 430 U.S. 327, 97 S.Ct. 1211, 51 L.Ed.2d 376 (1977).

"Here it is abundantly clear that appellees had an *opportunity* to present their federal claims in the state proceedings.... [A]nd their failure to avail themselves of such opportunities does not mean that the state procedures were inadequate...."[4]

Plaintiffs' counterclaim, which was timely filed in the Independence County Circuit Court proceedings, raised the same federal constitutional claim alleged in plaintiffs' complaint here. Pursuant to stipulation between the parties, in the state court proceedings, plaintiffs' federal claim was not

---

3. Title 42, Section 1983 provides:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

4. Rule 13 of Arkansas' Rules of Civil Procedure provides:

"A pleading *shall* state as a counterclaim any claim which, at the time of filing the pleading, the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim...."

In *May v. Exxon*, 256 Ark. 865, 512 S.W.2d 11 (1974), the Arkansas Supreme Court held that a party who fails to assert a claim by counterclaim as required may not assert the claim in a separate action.

litigated during the two jury trials conducted by the state court. On August 12, 1980, the state court granted plaintiffs' motion for a voluntary nonsuit of their federal claim.

It is plain that the federal constitutional issues asserted here grew out of the same circumstances that precipitated the state court proceedings and involve the same parties. In electing to take a voluntary nonsuit of their counterclaim, plaintiffs not only failed to pursue their federal constitutional claim in an ongoing state court proceeding at the trial court level, but also forfeited appellate review of any adverse decision, at the trial level, by the Arkansas and the United States Supreme Courts.

 The power of eminent domain, which AP&L has employed against plaintiffs and which plaintiffs argue that AP&L is the alter ego of the State of Arkansas, is an attribute of and inherent in a sovereign state; and the procedure for exercising this power is a matter for legislative regulation. *City of Little Rock v. Raines*, 241 Ark. 1071, 411 S.W.2d 486 (1967); *City of Little Rock v. Sawyer*, 228 Ark. 516, 309 S.W.2d 30 (1958). Moreover, it is plain that the state may delegate its power of eminent domain to a corporation in which the public has an interest. *McClintock v. Bovay*, 163 Ark. 388, 260 S.W. 395 (1924). Given these circumstances, the Court is persuaded that while this is a civil action and the State of Arkansas is not a party litigant *per se*, this case does involve important state interests, policies, and practices involving the application of the doctrine of eminent domain. In a real and crucial sense, the State of Arkansas has a vital interest in vindicating the general practice of gaining entry or possession of private property for public use, prior to the determination and payment of damages, by making deposit of a cash sum as directed by a trial judge. Consequently,

the Court is persuaded that the state's interest in the issues raised by plaintiffs is substantial and the Independence County Circuit Court was a proper forum for the plaintiffs to present their federal constitutional claim in an ongoing proceeding. *See: Trainor v. Hernandez*, 431 U.S. 434, 97 S.Ct. 1911, 52 L.Ed.2d 486; *Juidice v. Vail*, supra; *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1970).

Plaintiffs do not argue that the State procedures were inadequate, in any way, to deal fairly and reasonably with their federal claim. Accordingly, plaintiffs' failure to avail themselves of the opportunity afforded them in the Independence County Circuit Court dictates a dismissal of this action.[5]

IT IS SO ORDERED.

---

5. Plaintiffs instituted this action in their own behalf and "on behalf of a class similarly situated" on September 2, 1980, but no steps were taken by plaintiffs to certify this action as a class action in accordance with Local Rule 24 which provides that a plaintiff's failure to move for class certification within 90 days after the filing of a complaint in a class action "shall constitute and signify an intentional abandonment and waiver of all class allegations contained in the complaint and same shall proceed as an individual, non-class action thereafter..."