Ray EDWARDS and Louise Edwards, his wife, Individually, and on Behalf of a Class Similarly Situated, Appellants,

v.

ARKANSAS POWER & LIGHT COMPANY, Appellee.

No. 81–1865.

United States Court of Appeals, Eighth Circuit.

Submitted Feb. 8, 1982.

Decided July 8, 1982.

Rehearing Denied Aug. 18, 1982.

---

Bill W. Bristow, Jonesboro, Ark., Steve Bell, John Norman Harkey, Batesville, Ark., for appellants.

Robert L. Robinson, Jr. and Wm. David Duke, House, Holmes & Jewell, P. A., Little Rock, Ark., for appellee.

Before HEANEY, McMILLIAN and ARNOLD, Circuit Judges.

HEANEY, Circuit Judge.

This matter is before the Court on the appeal of Ray and Louise Edwards from the decision of the district court, 519 F.Supp. 484, dismissing their section 1983 action against Arkansas Power & Light Company (AP&L). We reverse and remand to the district court with directions to abstain until the state court, in plaintiffs' pending state lawsuit, has had an opportunity to resolve certain unsettled questions of Arkansas law that may make it unnecessary to decide or may materially alter the result of the Edwards' federal constitutional challenge.

## I.

### FACTS.

Pursuant to Ark.Stat. §§ 35–302 and 73–276.15, AP&L possesses the power of eminent domain and, thus, has the right to condemn private property for the purpose of constructing "electric generating plant sites and substation sites, and compressor substation sites and meter station sites." Condemnation is conditioned upon the payment of just compensation by the utility to the property owner.

On October 20, 1978, AP&L filed a petition in Independence County Circuit Court

to condemn several tracts of land owned by plaintiffs Ray and Louise Edwards. To immediately secure title to plaintiffs' property, AP&L deposited in the registry of the circuit court, pursuant to a court order, the sum of $136,000.[1] The amount of the deposit was based upon AP&L's estimate to the circuit court that just compensation for plaintiffs' land was $850 per acre.

The plaintiffs filed their answer, which was essentially a general denial, and counterclaimed for (1) just compensation and (2) damages for, in essence, AP&L's failure to exercise good faith in estimating the value of plaintiffs' land at $850 per acre when it knew that the property was worth at least $1,650 per acre.

The parties stipulated that plaintiffs' just compensation and bad faith counterclaims were to be tried separately. Accordingly, the issues were bifurcated, and the bad faith claim was to be tried subsequent to the jury trial on just compensation.

In October, 1979, the Independence County jury determining just compensation found that the plaintiffs' land had a fair market value of $1,700 per acre. Pursuant to a motion by AP&L, however, this verdict was set aside, and AP&L was granted a new trial. A second jury awarded the plaintiffs $2,050 per acre for 167.25 acres of land and $816.67 per acre for an additional forty acres. The circuit court entered judgment in favor of the plaintiffs on their verdict.

Subsequently, the plaintiffs moved for a voluntary nonsuit of their bad faith counterclaim against AP&L. The circuit court granted the motion, explicitly stating that the dismissal was without prejudice. Thereafter, the plaintiffs filed their bad faith claim as a separate section 1983 action in the United States District Court for the Eastern District of Arkansas. The plaintiffs also filed their bad faith claim as a separate action in state court, but have not pursued that action pending resolution of this suit in the federal courts. The federal district court dismissed the plaintiffs' complaint, and they now appeal to this Court.

## II.

*PLAINTIFFS' SECTION 1983 ACTION.*

The plaintiffs contend that due process requires that a utility acting under the Arkansas *ex parte* condemnation procedure act in good faith and not engage in knowing misrepresentation to the circuit court. The plaintiffs claim that AP&L violated this duty by knowingly and intentionally misrepresenting the value of plaintiffs' property. They allege that AP&L estimated that plaintiffs' land was worth $850 per acre when it knew the property was worth substantially more because it had settled similar cases in Independence County for $1,650 per acre, and its own appraiser had advised the utility prior to the just compensation trial that the value of the land was $1,650 per acre.

The plaintiffs claim that as a result of this intentional underestimate, AP&L was unjustly enriched by making use of the difference between the deposit of $136,000 and the final jury award of $203,000. The plaintiffs also contend that because of this bad faith by AP&L, they were compelled to employ an attorney to establish the fair market value of their land, and they were denied the use of their land or a sum of money equal to its fair market value during the time prior to the determination of just compensation. Nothing in the relevant eminent domain statutes, Ark.Stat. §§ 35–301—35–316, 73–276.15, provides for an award of attorney fees to a landowner who must establish the fair market value of his or her property in a just compensation trial. Moreover, although the plaintiffs are enti-

---

1. Arkansas law permits a utility to condemn private property by filing a petition for condemnation and depositing a court-determined sum sufficient to secure compensation for the property owners. Ark.Stat. §§ 35–302, 73–276.15. After the utility makes the deposit, the circuit court enters a condemnation order immediately transferring title. *Id.* These proceedings are conducted *ex parte. Id.* The deposit remains in the circuit court registry until just compensation for the dispossessed property owner is determined by a jury in a subsequent circuit court proceeding. *Id.*

tled to interest on the amount of the jury verdict, accruing from the date the utility posted the deposit and took possession of their land, *Housing Authority of Little Rock v. Rochelle*, 249 Ark. 524, 459 S.W.2d 794, 797–798 (1970), they claim that state law entitles them to no more than an interest rate of ten percent [2]—even though the annual interest rate on money was approximately seventeen percent during the time between the taking and the jury award. The plaintiffs allege that there is no Arkansas constitutional, statutory or common law remedy which will compensate them for these damages. They claim, therefore, that the due process clause of the United States Constitution guarantees them a remedy.[3]

### III.

### THE DISTRICT COURT'S OPINION.

The district court opinion can be read as dismissing plaintiffs' federal constitutional claim on three alternative grounds: (1) the claim is barred by the doctrine of res judicata, (2) the claim was a compulsory counterclaim to AP&L's condemnation petition and, hence, plaintiffs' failure to assert it in state court bars its assertion here, and (3) the claim fails to state a valid section 1983 cause of action. AP&L argues that the district court's decision can be sustained on each of these rationales.

2. The plaintiffs cite no authority for their claim. They apparently are relying on Ark.Stat. § 29–124, which establishes a rate of interest on debts of no more than ten percent.

3. In *State v. Carney*, 309 N.W.2d 775, 776 (Minn.1981), the Minnesota Supreme Court held that the Minnesota Constitution requires that in a condemnation action, the landowner must be paid a rate of interest sufficient to compensate him or her for the property's market value at the time of the taking. The Minnesota Supreme Court stated:

> On remand the trial court must determine the rate of interest required to give the landowner "the market value of the property at the time of taking contemporaneously paid in money." * * * The landowner is entitled to that return which would have been available if the landowner had been timely paid and had made reasonable and prudent invest-

### A. *Res Judicata.*

The doctrine of res judicata provides that issues may not be raised in a second lawsuit when they have been *or might have been* litigated in a prior proceeding arising out of the same cause of action and involving the same parties or their privies.[4] *E.g., Robbins v. District Court of Worth City, Iowa*, 592 F.2d 1015, 1017 (8th Cir.), *cert. denied*, 444 U.S. 852, 100 S.Ct. 107, 62 L.Ed.2d 69 (1979). AP&L argues that plaintiffs' bad faith claim arises from the same factual events that precipitated the condemnation proceedings and involves the same parties. It argues, therefore, that res judicata bars the plaintiffs from asserting their bad faith claim here because they failed to pursue it in the prior state court proceedings.

### B. *Compulsory Counterclaim.*

In *May v. Exxon Corp.*, 256 Ark. 865, 512 S.W.2d 11, 12 (1974), the Arkansas Supreme Court held that Ark.R.Civ.P. 13 bars a party who fails to assert a compulsory counterclaim from bringing that claim in a separate action. A counterclaim that arises from the same transaction or occurrence that is the subject matter of the opposing party's claim is compulsory. Ark. R.Civ.P. 13.[5]

AP&L argues that the plaintiffs' bad faith claim was a compulsory counterclaim to its condemnation petition. It ar-

ments. We note that the return which satisfies the requirements of just compensation may be more, less, or equal to the return allowed by statute. [Citations omitted.]

4. Res judicata apparently applies to section 1983 causes of action. *See Allen v. McCurry*, 449 U.S. 90, 101–105, 101 S.Ct. 411, 418–20, 66 L.Ed.2d 308 (1980); *Robbins v. District Court of Worth City, Iowa*, 592 F.2d 1015, 1017 (8th Cir.), *cert. denied*, 444 U.S. 852, 100 S.Ct. 107, 62 L.Ed.2d 69 (1979).

5. Ark.R.Civ.P. 13 provides:

> A pleading shall state as a counterclaim any claim which, at the time of filing the pleading, the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim * * *.

gues that both actions arose out of the same transaction or occurrence because the claims, as well as plaintiffs' counterclaim for just compensation, all are based on the same basic factual events surrounding AP&L's condemnation of plaintiffs' land. A party's counterclaim is not compulsory if it cannot be asserted in the same proceeding as the opposing party's claim. AP&L, however, contends that the plaintiffs' bad faith claim was a compulsory counterclaim because adequate state court procedures were available to the plaintiffs to try their bad faith counterclaim along with the utility's condemnation petition and their just compensation counterclaim.

Consequently, AP&L argues that because the plaintiffs failed to utilize state procedures where they could have asserted their bad faith counterclaim, Ark.R.Civ.P. 13 bars them from bringing it in a separate action.

### C. *Failure to State a Claim.*

Apart from the res judicata and compulsory counterclaim doctrines, AP&L, relying on *Light v. Blackwell,* 472 F.Supp. 333 (E.D. Ark.1979), *aff'd without opinion,* 620 F.2d 307 (8th Cir. 1980),[6] contends that the plaintiffs have failed to state a valid section 1983 action. In *Light,* landowners brought a section 1983 action against the Arkansas State Highway Commission, alleging a taking of their property without just compensation and the continuing torts of trespass and maintenance of a nuisance. *Id.* at 336. The district court dismissed the constitutional claim, finding that the landowners had not been deprived of due process because adequate state remedies were available in the state court for the alleged wrongdoing. *Id.* at 336–339. In reaching this conclusion, the *Light* court relied on *KAO v. Red Lion Municipal Authority,* 381 F.Supp. 1163 (M.D.Pa.1974), which stated:

No assertion has been made that plaintiffs have been denied an opportunity to press their claims in the state court. There is no reason to believe that the Commonwealth of Pennsylvania will not accord full constitutional protection to plaintiffs' property rights. In light of this fact, there is no federal constitutional violation. * * * The fact that there allegedly has been a taking of plaintiffs' property without compensation or before any condemnation has taken place does not mean plaintiffs' constitutional rights were violated, since compensation is available under Pennsylvania law. * * * Furthermore, to adjudicate the claims plaintiffs assert herein would be an unwarranted interference with state court jurisdiction.

*Id.* at 337 (citations omitted).

AP&L argues that *Light* requires a holding here that the plaintiffs have not stated a cause of action because they failed to assert their bad faith counterclaim in on-going state proceedings.

### IV.

### *AVAILABLE STATE PROCEDURES.*

It is evident then that AP&L, assuming that plaintiffs' bad faith claim states a cognizable cause of action under the Arkansas constitution or statutory or common law, centers its defense to the federal constitutional action asserted here on the supposed availability of state court procedures to resolve plaintiffs' claim.[7] The district court agreed with this view. It held that "plaintiffs' failure to avail themselves of the opportunity afforded them in Independence County Circuit Court dictates a dismissal of this action."

Thus, if plaintiffs' bad faith claim does not state a valid Arkansas constitutional, statutory or common law cause of action, or if state court procedures to resolve plaintiffs' claim along with AP&L's condemnation suit were not available or adequate, we

---

**6.** The Eighth Circuit decision, affirming *Light v. Blackwell,* 472 F.Supp. 333 (E.D.Ark.1979), was not printed or published and, hence, it has no precedential value.

**7.** AP&L argues alternatively that the landowners' bad faith claim does not state a valid cause of action under the Arkansas constitution, or common or statutory law.

cannot agree with the district court's opinion. Nowhere does the district court discuss the state court remedies which the plaintiffs elected not to pursue. The plaintiffs vigorously contend that they could not have presented their bad faith claim in the condemnation proceeding initiated by AP&L in Independence County Circuit Court for two reasons. First, the parties had already agreed to bifurcate the condemnation proceeding and the bad faith claim. Second, and most importantly, Arkansas law effectively prohibits the plaintiffs from trying their bad faith claim in the same proceeding as AP&L's condemnation suit. Pursuant to Ark.Stat. § 35–101, just compensation is the sole issue for determination in an eminent domain proceeding.

Assuming that the bad faith claim is a cognizable cause of action under the Arkansas constitution or statutory or common law, AP&L concedes that it could not have been tried in the condemnation proceeding which the utility brought in state court. AP&L, however, claims that the plaintiffs had available alternative state procedures which would permit them to adequately pursue their bad faith claim in state court along with the condemnation action. According to AP&L, state procedures would have permitted the plaintiffs to:

1. Petition the circuit court to increase the amount of AP&L's deposit, and then move to withdraw the deposit.

2. Object to the order of entry by the circuit court which transfers title from the landowner to the utility. This order may be appealed to the Arkansas appellate courts.

3. Transfer the case to an equity court to determine all issues, including the amount of just compensation and whether AP&L's alleged bad faith entitled the plaintiffs to compensation or operated to forfeit the utility's right to condemn.

4. Institute a separate bad faith claim in the circuit court, as the landowners had done prior to taking a voluntary nonsuit on that claim.

5. Petition the circuit court to award expenses due to AP&L's alleged bad faith if the utility had dismissed its complaint after the jury verdicts.

We have serious doubts concerning whether plaintiffs' bad faith claim states a cause of action in Arkansas and, even if it does, whether the procedures identified by AP&L were actually available to landowners to adequately resolve their claim. At oral argument, both AP&L and the plaintiffs conceded that the availability of these or other state procedures is unsettled under Arkansas law. Our research also indicates that the state law concerning these questions is unclear. In particular, we are concerned with the following uncertainties in Arkansas law.

First, it is unclear whether the plaintiffs' bad faith claim is cognizable under the Arkansas constitution, or the state's statutory or common law. If just compensation for the condemned land is the plaintiffs' exclusive damages remedy under Arkansas law, as AP&L contends, then none of the supposed alternative state remedies apparently could be available to the landowners. For example, if the plaintiffs' bad faith action does not present a cognizable claim in the Arkansas equity courts, the plaintiffs apparently could not have transferred the condemnation proceedings to equity to resolve all issues at one trial. *See City of El Dorado v. Kidwell*, 236 Ark. 905, 370 S.W.2d 602, 603 & n.1 (1963); *Burton v. Ward*, 218 Ark. 253, 236 S.W.2d 65, 66–67 (1951).

Second, even if plaintiffs' bad faith claim is cognizable under Arkansas' constitutional, statutory or common law, we are uncertain whether some of the state court procedures cited by AP&L are available or in any meaningful way adequate. For example, AP&L bases its claim that the landowners may petition to increase and withdraw the utility's deposit on *Adams v. Arkansas State Highway Commission*, 235 Ark. 808, 363 S.W.2d 134, 135–136 (1962). In *Adams*, however, the applicable eminent domain statute, unlike the one involved here, expressly authorized the increase and withdrawal of a deposit. Similarly, we fail to

see how the right to petition for an expense award if AP&L had dismissed its condemnation petition after the jury verdict is relevant. AP&L, in fact, did not dismiss its condemnation complaint and, thus, this right appears to offer the plaintiffs no remedy for their bad faith claim.

Finally, the res judicata and compulsory counterclaim doctrines are based largely on a policy of conserving judicial resources by avoiding unnecessary relitigation of closely related issues. The plaintiffs may not have been able to assert their bad faith claim in state court. For example, as discussed above, it is by no means clear that Arkansas recognizes such a cause of action under its constitution, statutes, or common law. Nor is it settled that the plaintiffs could have moved AP&L's eminent domain action to an equity court to have their bad faith claim settled at the same time and in the same proceeding as just compensation. It seems clear, however, that they could not have tried their bad faith theory as a counterclaim to AP&L's condemnation action in the circuit court because, under state law, just compensation is the sole issue for determination in an eminent domain proceeding in the circuit court.

Obviously, if the plaintiffs could not have asserted their action in state court, their failure to do so cannot justify the invocation of the res judicata and compulsory counterclaim doctrines against them here. Moreover, even if the plaintiffs could have brought their bad faith claim in some state court proceeding, the Arkansas courts have not clearly determined whether the res judicata or compulsory counterclaim doctrines are applicable in circumstances such as those present here.[8]

### A. Abstention.

■ Obviously, when legitimate differences of opinion exist between the parties regarding the value of the condemned property, due process entitles a landowner to nothing more than just compensation for the land taken by the utility. The plaintiffs here, however, contend that AP&L did not merely mistakenly underestimate the value of their property. Rather, they allege that AP&L intentionally and knowingly misrepresented the value of plaintiffs' land to the circuit court when it utilized the state's *ex parte* condemnation procedure. Moreover, they contend that neither the Arkansas constitution, statutes or common law provide any remedy to a landowner who is forced, as a result of such bad faith misrepresentations, to incur the costs of establishing the actual fair market value of his or her property.

If AP&L, in fact, made such knowing and intentional misrepresentations, and no state

8. AP&L concedes that the circuit court order granting the plaintiffs a voluntary nonsuit explicitly states that their bad faith claim is dismissed "without prejudice." Nonetheless, AP&L, relying on *Shrieves v. Yarbrough*, 220 Ark. 256, 247 S.W.2d 193 (1952), argues that the voluntary dismissal operates as a dismissal with prejudice that bars the subsequent assertion of plaintiffs' bad faith claim. In *Shrieves*, an automobile accident case, the defendant took a voluntary nonsuit on her counterclaim after a directed verdict was granted against the plaintiff. 247 S.W.2d at 194. The *Shrieves* court held that the dismissal was with prejudice, stating:

[I]f Yarbrough and Warren should have attempted to assert—as a defense to Mrs. Shrieves' action in the White Circuit Court— the same allegations they had made against her in their case in the Johnson Circuit Court, then against such allegations, Mrs. Shrieves could have successfully pleaded as res judicata the action of the Johnson Circuit Court in

directing a verdict in her favor. Thus, Mrs. Shrieves is in the position of wanting the benefit and none of the disadvantages of the Johnson Circuit Court case.

*Id.*

*Shrieves*, however, does not mandate a conclusion here that the plaintiffs' bad faith claim is barred because they took a voluntary nonsuit on their action. In *Shrieves*, the court simply held that when a defendant fails to assert a compulsory counterclaim, she cannot institute it later as an independent action even if the counterclaim was voluntarily dismissed without prejudice in the first lawsuit. *Id.* Here, it is unclear under Arkansas law whether the landowners' bad faith claim was a compulsory counterclaim to AP&L's condemnation suit. If it was not, Ark.R.Civ.P. 13 does not bar a later independent action. *Shrieves* does not suggest otherwise because in that case, the court's holding was premised on the fact that the counterclaim was plainly compulsory.

remedy exists for such bad faith misconduct, then we believe, contrary to the district court, that federal due process may well accord the plaintiffs a remedy for AP&L's misconduct. *See State v. Carney, supra,* 309 N.W.2d at 776. We need not, however, decide that issue at this time.

Because of the unanswered questions of Arkansas law that are central to plaintiffs' lawsuit, we believe that the district court should have abstained from hearing the landowners' action until the state court has had an opportunity to resolve these unsettled state law questions. *See Texas v. Pullman Co.,* 312 U.S. 496, 499–501, 61 S.Ct. 643, 644–45, 85 L.Ed. 971 (1941). *See also,* 17 Wright, Miller & Cooper, Fed.Prac. & Proc. §§ 4241, 4242 at 431–433, 449–470 (1978). In *Lake Carriers' Association v. MacMullan,* 406 U.S. 498, 511, 92 S.Ct. 1749, 1757–58, 32 L.Ed.2d 257 (1972), the Supreme Court explained when *Pullman*-type abstention is proper:

> The paradigm case for abstention arises when the challenged state statute is susceptible of "a construction by the state courts that would avoid or modify the [federal] constitutional question." * * * More fully, we have explained: "Where resolution of the federal constitutional question is dependent upon, or may be materially altered by, the determination of an uncertain issue of state law, abstention may be proper in order to avoid unnecessary friction in federal-state relations, interference with important state functions, tentative decisions on questions of state law, and premature constitutional adjudication. * * * The doctrine * * * contemplates that deference to state court adjudication only be made where the issue of state law is uncertain." *Harman v. Forssenius,* 380 U.S. 528, 534 [85

S.Ct. 1177, 1182, 14 L.Ed.2d 50] (1965). (Citations omitted.)

The exercise of such *Pullman*-type abstention would plainly be proper here.[9] The federal constitutional issue raised by the plaintiffs might be avoided if the state court determines that res judicata or Ark.R. Civ.P. 13 bars plaintiffs' bad faith action because the landowners did not pursue available and adequate state remedies in the prior state court condemnation proceedings. Moreover, apart from the res judicata and compulsory counterclaim doctrines, under the analysis of *Light v. Blackwell, supra,* 472 F.Supp. at 336–339, *see supra,* at 1152–1153, plaintiffs' federal constitutional challenge may be materially affected by whether their bad faith theory states a cause of action under Arkansas law, and if so, whether state court procedures are available to resolve that claim.[10]

Moreover, it is clear that abstention can apply to eminent domain cases. *E.g., County of Allegheny v. Frank Mashuda Co.,* 360 U.S. 185, 79 S.Ct. 1060, 3 L.Ed.2d 1163 (1959); *Louisiana Power and Light Co. v. City of Thibodaux,* 360 U.S. 25, 79 S.Ct. 1070, 3 L.Ed.2d 1058 (1959). Indeed, the important state interest in eminent domain proceedings combined with difficulties in state law, make this case a particularly appropriate one for abstention. *See Schenley Industries, Inc. v. N. J. Wine & Spirit Wholesalers Association,* 272 F.Supp. 872, 882–883 & n.17 (D.C.N.J.1969). *See also* 17 Wright, Miller & Cooper, Fed.Prac. & Proc., *supra,* § 4241 at 439; Field, *Abstention in Constitutional Cases: The Scope of the Pullman Abstention Doctrine,* 122 U.Pa.L. Rev. 1071, 1148–1151 (1974).

---

**9.** It is not necessary that a party request that the federal court abstain in a *Pullman*-type case. The court may decide *sua sponte* that abstention is proper. *See Bellotti v. Baird,* 428 U.S. 132, 143 n.10, 96 S.Ct. 2857, 2864 n.10, 49 L.Ed.2d 844 (1976); *Naylor v. Case and McGrath, Inc.,* 585 F.2d 557, 563 (2d Cir. 1978). *See also* 17 Wright, Miller & Cooper, Fed.Prac. & Proc. §§ 4241, 4242, at 431–433, 449–470 (1978).

**10.** Our questions concerning the availability of state procedures to resolve plaintiffs' bad faith claim are relevant, of course, only to a cause of action cognizable under the Arkansas constitution, or statutory or common law. *See supra,* at 1154–1155. There is no doubt that the plaintiffs could assert their bad faith claim in state, as well as federal, court if it is actionable under 42 U.S.C. § 1983.

Finally, abstention is also particularly appropriate here because the plaintiffs have already filed their bad faith claim in state court. Thus, there is apparently no doubt about the existence of adequate state procedures to answer the state law questions. *Cf., e.g., Zbaraz v. Quern*, 572 F.2d 582, 587 (7th Cir. 1978) (abstention improper where there are no satisfactory state court procedures to decide state law issues). Moreover, because this state action is already pending, the state law questions can be resolved without lengthy or unnecessary delay. *See, e.g., Harris County Commissioners Court v. Moore*, 420 U.S. 77, 83, 95 S.Ct. 870, 875, 43 L.Ed.2d 32 (1975).

█ Accordingly, we remand this case to the district court with directions to abstain until the plaintiffs have obtained a state court determination of whether the plaintiffs' bad faith claim states a cause of action cognizable under Arkansas's constitutional, statutory or common law and, if so, whether it was a compulsory counterclaim to AP&L's condemnation action. The district court, however, should retain jurisdiction over this case so that it can address, if necessary, the plaintiffs' constitutional challenge when the unsettled questions of state law have been determined by the Arkansas court. If the state court holds that plaintiffs' theory is cognizable under Arkansas law, and there are adequate state procedures to try their bad faith claim, the plaintiffs will have been accorded the due process guaranteed by the United States Constitution. *See Light v. Blackwell, supra*, 472 F.Supp. at 336–339. If, on the other hand, the state court finds that their bad faith action is not cognizable under Arkansas law, then the district court, pursuant to its retained jurisdiction, will have an opportunity to reconsider the question of whether the United States Constitution accords the plaintiffs a remedy under 42 U.S.C. § 1983 for AP&L's alleged bad faith conduct. *Id.* The parties, of course, may appeal that decision to this Court if they wish.

The district court order, therefore, is vacated, and this case is remanded for further proceedings consistent with this opinion.

ARNOLD, Circuit Judge, concurring.

I agree with the Court that this is an appropriate case for *Pullman* abstention. There are unsettled questions of state law that may determine or affect plaintiffs' due-process claim, and the pending state-court § 1983 action affords a ready vehicle for the authoritative determination of those questions. I write separately because I reach this result by a different route and with a different emphasis from the Court's.

1. When the plaintiffs go back to the state courts after our remand, the first question to be answered, I should think, will be the res judicata effect of the prior judgment in the condemnation action, coupled with the voluntary non-suit of the landowners' "bad faith" counterclaim. The District Court seems to have thought that the counterclaim was compulsory, see 519 F.Supp. at 486 & n.3, and if this is true the failure to press it would ordinarily bar refiling. There is much to be said for this point of view. It is hard to see how the counterclaim can be said to arise out of a "transaction or occurrence" different from "the subject matter" of AP&L's claim for condemnation. Ark.R.Civ.P. 13. If there is a cause of action, federal or state, for a bad-faith underestimation of a deposit by a condemnor, it makes a lot more sense for that claim to be tried in the same case as the basic claim for condemnation that underlies the entire controversy. The most important issue raised by both claims is identical: what was the fair market value of the land on the date of taking? The more the value fixed by the jury in the condemnation trial exceeds the deposit (if it exceeds it at all), the more likely it is that a trier of fact might be persuaded that the underestimation of the deposit was willful. So there will be some saving of time and effort if the condemnation and bad-faith claims are tried in the same case, before the same judge, even if they are "bifurcated" in the sense of not being submitted to the same jury.

On the other hand, at least two features of this case make me uncertain enough

about the proper application of Ark.R.Civ.P. 13 to want the question resolved by the courts of the sovereign that promulgated the rule. First, both sides agree that the bad-faith counterclaim could not conveniently have been submitted to the same jury as decided the fair market value of the land taken. Even if the counterclaim had not been withdrawn, a separate hearing, presumably before another jury,[1] would still have been necessary. So the saving of parties', lawyers', and judges' time, effort, and expense would not have been so great as in the usual compulsory-counterclaim situation, in which everything can and should be tried at once. Second, the order of the Circuit Court of Independence County, Arkansas, allowing withdrawal of the counterclaim, expressly recited, not once but twice, that the counterclaim was being dismissed "without prejudice." *Arkansas Power & Light Co. v. Edwards*, No. CIV 78–228 (Cir.Ct. Independence County, Ark., Aug. 12, 1980). Presumably the landowners would never have dismissed their counterclaim had they known the dismissal was to be *with* prejudice. Possibly the Circuit Court erred as a matter of law in describing the dismissal as without prejudice, but it is hardly fair to the landowners to penalize them for this error. *Shrieves v. Yarbrough*, 220 Ark. 256, 247 S.W.2d 193 (1952), holds that the voluntary dismissal of a compulsory counterclaim is a bar to its reassertion, and that must be the general rule, but in *Shrieves*, so far as the reported opinion of the Supreme Court of Arkansas discloses, there had not been an express recitation in the court's prior order of dismissal that its action was "without prejudice."

2. Whether these potential distinguishing factors take this case out of the normal compulsory-counterclaim rule is solely a question of Arkansas law. These issues were not explicitly addressed by the District Court, and they are sufficiently trou-

blesome—and the underlying federal questions sufficiently important—to justify *Pullman* abstention. If the state courts hold that Ark.R.Civ.P. 13 applies, this case will be over. The landowners' § 1983 actions, federal and state, will be barred by *res judicata.* The *res judicata* effect of the judgment of an Arkansas state court is itself a question of Arkansas law. "The . . . judicial proceedings of any court of any . . . State . . . shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such State . . . ." 28 U.S.C. § 1738 (1976). This principle applies fully to judgments of state courts of competent jurisdiction deciding federal questions. See *Kremer v. Chemical Constr. Co.*, —— U.S. ——, 102 S.Ct. 1883, 72 L.Ed.2d 262 (1982); *Allen v. McCurry*, 449 U.S. 90, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980).[2]

3. If the state courts hold that the landowners' § 1983 claim is not precluded by the former adjudication, the state courts should then decide whether plaintiffs' bad-faith theory states any kind of claim for relief under state law. Ark.Stat.Ann. § 73–276.15(a)(5) requires a utility company's petition for condemnation to include "a statement of the sum of money *estimated* by such utility to be just compensation for the land taken" (emphasis added). In most cases this estimate will determine the amount of the initial deposit. The state courts may well hold that the statute necessarily contemplates an estimate made in good faith. If they do, I have no doubt that state procedures will be found to afford a remedy for the enforcement of the right thus implied. If the state courts hold that the landowners' "bad faith" theory does not state a claim under state law, then the federal constitutional issue sought to be raised by the instant § 1983 complaints will recur.

---

1. Unless the whole case could have been transferred to equity, which I doubt: the landowners were not asking for an injunction, but only for money.

2. Congress may of course repeal or modify 28 U.S.C. § 1738, but it has not done so in 42

U.S.C. § 1983. *Allen v. McCurry, supra.* Nor is there any claim here that the doctrine of *res judicata*, if it applies in this case, is itself inconsistent with due process or otherwise unconstitutional.

4. At this point the federal courts should fall silent. State-court action may make the decision of any federal question unnecessary, and the hope that that will occur is the whole rationale for *Pullman* abstention. Yet, this Court's opinion intimates, *ante,* pp. 1155–1156, that if "no state remedy exists for . . . bad faith misconduct" on the part of a condemnor, "federal due process may well accord the plaintiffs a remedy for AP&L's [alleged] misconduct." This statement might better have been omitted, but it is clearly only a dictum, since the Court at once adds: "We need not, however, decide that issue at this time." *Ibid.* Since the Court has foreshadowed a possible opinion on the question, I take the liberty of following suit. What follows is dictum in a separate opinion, if there is such a thing.

Plaintiffs' whole theory is based on their claim that AP&L made a $136,000 deposit for their land when it knew the land was worth more. From this supposed bad faith flow all the damages which plaintiffs claim the Due Process Clause of the Fourteenth Amendment entitles them to recover. Yet, the requirement that a deposit be made in the first place is a creature of state law only. The Constitution of the United States says nothing about deposits. So far as the Fourteenth Amendment is concerned, a condemnor may take property without a deposit, so long as just compensation is ultimately paid.

This analysis is consistent with current federal law on the subject. Federal condemnation procedures contained in the Declaration of Taking Act, 40 U.S.C. §§ 258a–258e, provide for the posting of a deposit with the court in an amount "estimated . . . to be just compensation for the land taken." 40 U.S.C. § 258a. See also Fed.R.Civ.P. 71A(j). But there was no such requirement, so far as my research reveals, prior to the passage of the Act in 1931.[3] And even

now, apparently, resort to § 258a is not mandatory; the federal government can enter into physical possession, without instituting *any* condemnation proceedings, much less posting a deposit, and leave the property owner to seek compensation under the Tucker Act, 28 U.S.C. §§ 1346(a)(2) and 1491. *United States v. Dow,* 357 U.S. 17, 21, 78 S.Ct. 1039, 1044, 2 L.Ed. 1109 (1958). Nor does current federal case law recognize an injury due to the filing of an inadequate deposit.

In *In Re United States,* 257 F.2d 844 (5th Cir.), *cert. denied,* 358 U.S. 908, 79 S.Ct. 234, 3 L.Ed.2d 228 (1958), a District Court had vacated the government's declaration of taking pursuant to § 258a because of an inadequate deposit. The government had filed a sum of $100,000 with the court, but the property owners contended the property's value to be in excess of $1,600,000. The owners further contended, just as the plaintiffs do here, that the deposit was so inadequate as to evidence bad faith. The Court of Appeals set aside the order, concluding that the District Court acted beyond its power because under the statute the only role of the courts is the ultimate ascertainment of just compensation. *Id.* at 846–47. It went on to say

> [W]e deem the settled law to be that the purported bad faith exception to the rule of finality of the administrative estimate of just compensation *does not exist,* that, in short, the courts have no jurisdiction to review the amount of estimated compensation.

*Ibid.* (emphasis ours). *Accord, United States v. Cobb,* 328 F.2d 115 (9th Cir. 1964).

I am inclined to agree with this approach. If the final award includes interest at the market rate from the date of taking, I cannot see what the landowner has lost. If the answer is that the low deposit has, as a practical matter, increased his attorney's

---

**3.** A sampling of prior federal statutes required the government

> to pay over the judicially determined compensation before it [could] enter upon the land, Act of August 1, 1888, 25 Stat. 357, 40 U.S.C. § 257; Act of August 18, 1890, 26 Stat. 316, 50 U.S.C. § 171, or proceed under

> other statutes which enable[d] it to take immediate possession upon order of court before the amount of just compensation has been ascertained. Act of July 18, 1918, 40 Stat. 904, 911, 33 U.S.C. § 594 . . . .

*United States v. Dow,* 357 U.S. 17, 21, 78 S.Ct. 1039, 1044, 2 L.Ed. 1109 (1958).

fees, because it widens the spread to which a percentage-fee contract is applied, the fact remains that the state did not, as a matter of federal law, have to require any deposit at all. We are dealing here not with the Due Process Clause of the Fourteenth Amendment *simpliciter,* but with the Just Compensation Clause of the Fifth Amendment, as applied to the states by the Fourteenth. A violation of state law, however willful or reprehensible, does not *ipso facto* amount to a constitutional tort. It is hard for me to see, therefore, what AP&L's good or bad faith has to do with federal constitutional rights.

On the other hand, it seems entirely possible that landowners have a right, secured by the federal Constitution, to the fair market value of their property, including interest at the market rate from the date of taking to the date of payment. A thousand dollars three years from now is worth less than a thousand dollars in hand today, and a thousand dollars three years from now with interest at 10 per cent. is worth less than a thousand dollars three years from now with interest at 15 per cent. If a landowner could get 15 per cent. if he had the money now (and if, as a corollary, AP&L, which does have the money now, *is* getting 15 per cent.), then arguably compensation at a lower interest rate is not "just." That is the holding of *State v. Carney,* 309 N.W.2d 775 (Minn.1981), and, although the case arose under the Constitution of Minnesota, the principle, as a matter of logic, fits the federal Constitution just as well. If this theory has merit, it would be available irrespective of the condemnor's bad faith, and irrespective of the amount of any deposit. The Arkansas Constitution, Art. XIX, § 13, limits interest to ten per cent., but that provision would of course yield to the Fifth and Fourteenth Amendments if there were any inconsistency. This theory of just compensation, while not precisely stated in plaintiffs' complaint, is fairly comprehended within their allegations.

Finally, if I am right in thinking, at least tentatively, that there may be a federal constitutional right to interest at the market rate, but no such right to any good-faith deposit, that conclusion might have implications for the utility company's *res judicata* defense. For there would surely be no doubt that any contention as to the appropriate rate of interest should be raised and decided in the main condemnation action. It would be part of what the Court calls plaintiffs' just-compensation counterclaim, as opposed to their bad-faith counterclaim, and the determination of just compensation is the principal purpose of the condemnation proceeding. The landowners could still urge, however, that *res judicata* should not be applied because the order allowing withdrawal of their bad-faith counterclaim was expressly made "without prejudice," and because their claim for a higher rate of interest was initially proffered (even if incorrectly) as an incident of their bad-faith counterclaim.