LYTLE *v.* ZEBOLD.

5-1137                                                    299 S. W. 2d 74

Opinion delivered February 25, 1957.

*Brockman & Brockman,* for appellant.

*Robert A. Zebold* and *Coleman, Gantt & Ramsay,* for appellee.

GEORGE ROSE SMITH, J. W. W. West, a resident of Jefferson county, died testate in 1953, leaving an estate consisting of real and personal property. By his will the testator, who left no descendants, first provided for his widow, next made specific devises to three churches at Wabbaseka, Arkansas, and then left the residue of his estate in trust for purposes to be described in a moment. During the administration of the estate the present petition for a construction of the will was filed by the appellants, who are five of the eight named beneficiaries of the trust. It is the appellants' contention that the trust is invalid for several reasons. The attack is defended by the four appellees, being the executor and the other three named beneficiaries. This appeal is from an order of the probate court sustaining the validity of the trust.

The trust provisions of the will are extremely long and need only be summarized. The testator first directed his trustees to divide the corpus of the trust into as many equal parts as there should be survivors among

eight named persons, whom we will refer to as the life beneficiaries. These eight, who in fact all survived the testator, are his brother, his sister-in-law, his two sisters, two nieces, a great-niece, and a long-time employee. All except the sister-in-law and the employee were related to the decedent by blood.

After the division of the trust property into eight parts the trust is to be administered pursuant to seven paragraphs of the will, which are to this effect:

(1) The income from the share of each life beneficiary may, in the discretion of the trustees, either be paid to that beneficiary or be accumulated.

(2) In case of illness or other misfortune on the part of a life beneficiary the trustees may expend income accumulated for him and may also invade his part of the principal.

(3) Upon the death of each life beneficiary any accumulated income being held for him becomes a part of his estate.

(4) Upon the death of the employee beneficiary his share of the corpus is to be divided equally and added to the other shares originally created.

(5) Upon the death of each of the other life beneficiaries his share of the principal is to remain in trust, the income to be paid to or accumulated for his heirs, as determined by the Arkansas law of descent and distribution.

(6) Upon the death of the last surviving life beneficiary the trust property is to be distributed per capita among the lineal descendants of those life beneficiaries who were kin to the testator by blood. Should any of these distributees be a minor his share is to remain in trust and be delivered to him when he reaches the age of twenty-one.

(7) If, at the death of the last surviving life beneficiary, there should be no such living lineal descendants, the trust property is to be conveyed "to the Board

of Directors of the Wabbaseka Public Schools, now designated as School District Number 12 of Jefferson County, Arkansas.''

The appellants' first attack upon the trust is based on proof that in the interval between the execution of the will and the testator's death School District No. 12 was consolidated with another district to form Wabbaseka School District No. 7 of Jefferson County. It is argued that the original district has ceased to exist, that the gift to that district was an essential part of the testamentary plan, and that the invalidity of this element in the scheme results in the failure of the trust as a whole.

This argument is unsound, for either of two reasons. To begin with, West did not limit his benevolent intent to the particular school district then existing. Instead, he referred broadly to the Wabbaseka public schools, ''now designated'' as District No. 12. This language is amply sufficient to show that West's bounty was meant to extend to a successor of the district specifically named. See *McDonald* v. *Shaw*, 81 Ark. 235, 98 S. W. 952. Second, the gift over to the schools and the rest of the trust are not so interdependent that both must stand or fall together. That conclusion would follow only if the remainder to the school system is such an essential factor in the plan that it cannot be separated without defeating the testator's purpose in creating the trust. Cf. Rest., Trusts, § 65. It is plain, however, that West's primary concern lay with the life beneficiaries and those of their descendants who were of his blood. We find nothing in the will to indicate that the testator's solicitude for his relatives was dependent upon the continued existence of a particular school district.

The appellants' insistence that the trust violates the rule against perpetuities must also be rejected. That rule requires an interest to vest not later than twenty-one years after some life in being at the creation of the interest. Gray, The Rule Against Perpetuities (4th Ed.), § 201. In this case the eight life beneficiaries represent the measuring lives in being at West's death. It appears

that the estate will vest at the death of the last surviving member of this group, with merely a postponement of enjoyment in the case of remaindermen who are then minors. But even if it might be said that such a minor's interest will not vest until he attains twenty-one, the period allowed by the rule has still not been exceeded. This is true because membership in the class is limited to lineal descendants who are living at the expiration of the last measuring life.

In a third contention the appellants stress the fact that the executor has converted the entire trust estate into personal property. It is said that the language of this will would have created a fee tail at common law. It is then argued, on the authority of *Denson* v. *Thompson*, 19 Ark. 66, that the same words which would create an estate tail as to land give to the first taker an absolute interest in personal property.

Among several answers that might be made to this contention the simplest one is that this language would not have created a fee tail at common law. For such an estate to be created the succession must be confined to the issue of the first taker; the estate is not a fee tail if the limitation permits the interest to pass to persons other than the bodily heirs of the first taker. Rest., Property, § 59. Here West directed that the trust property be divided and that a specific portion of the corpus be allotted to each life beneficiary. There is no requirement that the interest of a particular life beneficiary must pass to his bodily heirs alone. To the contrary, it is contemplated that the interest of a life beneficiary who dies without direct descendants will eventually pass to collateral kindred. Thus the limitation fails to satisfy a fundamental condition to the creation of an estate tail.

Finally, it is shown that two of the life beneficiaries already have one child each. We are asked to declare that the interest of these two children is a vested remainder rather than one contingent upon their being alive at the death of the last surviving life beneficiary. This question was not decided by the trial court, if in-

deed it was even raised below, and we too must decline to explore this problem. For one thing, the two children are not parties to this litigation and therefore would not be bound by any determination we might make. *Hogan* v. *Bright,* 214 Ark. 691, 218 S. W. 2d 80. For another, it is not suggested that the requested declaration of law would have any practical effect whatever. It is not our practice to speculate upon issues having only a theoretical value.

Affirmed.

HARRIS, C. J., disqualified and not participating.