Ray EDWARDS and Louise EDWARDS, His Wife
*v.* ARKANSAS POWER & LIGHT COMPANY

85-189                                                    700 S.W.2d 52

Supreme Court of Arkansas
Opinion delivered December 9, 1985

*Bill W. Bristow,' P.A., Steve Bell,* and *John Norman Harkey,* for appellant.

*House, Wallace, Nelson & Jewell, P.A.,* for appellee.

GEORGE ROSE SMITH, Justice. ■ The key question on this appeal is whether the making of an insufficient deposit by the condemnor upon the filing of an eminent domain proceeding gives the landowner a cause of action in tort for the condemnor's alleged bad faith. We hold that it does not.

This case is a sequel to a condemnation action brought in October, 1978, by Arkansas Power & Light Company against the appellants, owners of land sought to be condemned as part of the

site for a generating plant. That case was tried to a jury and resulted in a verdict fixing the value of the land at $2,050 an acre, plus severance damages. The judgment on the verdict, with 10% interest from the date on which the circuit court authorized AP&L to take possession, has been satisfied in full.

In that condemnation action the landowners filed a counterclaim asserting that AP&L acted in bad faith, maliciously, and oppressively in depositing in the registry of the court only $136,000 ($850 an acre for 160 acres) when the company knew from its own appraisers that the landowners were entitled to at least $1,223.33 an acre. It was also alleged that between the filing of the complaint and the filing of the counterclaim AP&L had settled with other defendants owning similar land for $1,650 an acre.

The counterclaim asserted that AP&L's bad faith in depositing only $850 an acre had damaged the appellants in these ways: (1) They had been compelled to defend the case by employing attorneys for a fee based on a percentage of the ultimate recovery in excess of $850 an acre. (2) The appellants lost certain tax advantages by being delayed for a year or more in reinvesting the proceeds of the condemnation. (3) AP&L, by depositing only half of what was just compensation, had prevented the appellants from investing the withheld amount to bring them a return of more than 10% per annum. The counterclaim sought actual damages of $60,000 and punitive damages of $250,000.

By agreement the issues presented by the counterclaim were not to be tried until after a trial on the issue of just compensation had been completed. After that trial, however, the appellants took a nonsuit on their counterclaim, ostensibly "without prejudice," and filed substantially the same action in the federal court. The district court dismissed the suit. *Edwards* v. *Ark. Power & Light Co.*, 519 F. Supp. 484 (E.D. Ark. 1981). On appeal, however, the court of appeals held that the federal courts should abstain from considering the case on its merits "until the plaintiffs have obtained a state court determination of whether the plaintiffs' bad faith claim states a cause of action cognizable under Arkansas's constitutional, statutory or common law and, if so, whether it was a compulsory counterclaim to AP&L's condemnation action." *Edwards* v. *Ark. Power & Light Co.*, 683 F.2d 1149,

1157 (8th Cir. 1982).

Before the federal appellate court reached its decision the appellants, to avoid any question of limitations, refiled a complaint in the state court. That is the complaint now before us. It summarizes the earlier proceedings, restates the cause of action asserted in the original counterclaim, adds a conclusory allegation of intentional infliction of mental distress, and seeks an attorney's fee under 42 U.S.C. § 1988. The relief sought is increased to $250,000 in compensatory damages and $8,140,000 in punitive damages.

AP&L first filed a motion to dismiss for failure to state a cause of action, various reasons being asserted. ARCP Rule 12(b)(6). That motion was denied. In December, 1983, AP&L filed a motion for summary judgment, presumably on the pleadings as no affidavits or other proof was attached. The appellants responded promptly, in January. In March, 1985, AP&L filed an affidavit to support its motion for summary judgment. This affidavit asserts facts supposedly justifying AP&L's decision to deposit $850 an acre at the outset. We have disregarded the affidavit, because ARCP Rule 56 contemplates that supporting affidavits be filed with the motion for summary judgment, not some 15 months later. If such delays were permitted, the summary judgment procedure might be strung out almost indefinitely.

The trial court granted the motion for summary judgment, finding that for various reasons the complaint fails to state a cause of action. The appeal comes to us as a tort case.

Counsel for the appellants concede frankly that they know of no Arkansas authority to support the cause of action asserted in this case. We are urged to draw an inference favorable to the appellants from a reference to bad faith in an earlier condemnation case, *Selle* v. *City of Fayetteville*, 207 Ark. 966, 184 S.W.2d 58 (1944). There the landowner alleged that the city, in condemning land for an airport, was attempting to take more land than it needed in order to sell the excess at a profit. The court suggested that such bad faith might give rise to a cause of action for an attorney's fee, but there is no real resemblance between that fact situation and the present one.

■ It must be observed at the outset that a utility company's deposit when a case is filed is not required to be the measure of the landowner's compensation or an accurate estimate of the value of the land being condemned. Under the pertinent statute the deposit must be in an amount "determined by the Court to be sufficient to secure compensation to the owner or owners of the property or interest therein sought to be condemned." Ark. Stat. Ann. § 73-276.15(b) (Repl. 1979). We are not aware that the appellants have ever complained that the inadequacy of AP&L's deposit caused them to doubt that the payment of their ultimate judgment was not being sufficiently secured. As we have said, the amount of the judgment has been paid in full.

■ With respect to the appellants' asserted cause of action under Arkansas law, we agree with Judge Arnold's remarks with respect to the applicability of federal law, in his concurring opinion on the appellants' federal appeal: "If the final award includes interest at the market rate from the date of taking, I cannot see what the landowner has lost. . . . A violation of state law, however willful or reprehensible, does not *ipso facto* amount to a constitutional tort. It is hard for me to see, therefore, what AP&L's good or bad faith has to do with federal constitutional rights." 683 F.2d 1159-1160.

The fundamental weakness in the appellants' argument, as we see it, is the absence of a causal connection between AP&L's failure to deposit enough money and the damages asserted in the appellants' complaint.

■ It is first asserted that AP&L's bad faith forced the appellants to employ lawyers to defend the case. Why? In making the deposit AP&L alleged, and the trial judge found after an ex parte presentation, that AP&L and the appellants had been unable to agree upon what the landowners should receive for their property. Thus the condemnation suit became unavoidable. If, then, the inadequacy of the deposit compelled the appellants to employ counsel, AP&L could have escaped a charge of bad faith only by making a deposit so large that the landowners would have accepted it without employing counsel to contest the case. In short, under this theory AP&L would be guilty of actionable bad faith unless it disregarded the rights of its ratepayers, relin-

quished its right to a jury trial, and paid the appellants every cent they asked for. It is obvious that the inadequacy of the deposit was not the compelling reason for the employment of counsel.

It is next asserted that the delay incident to the litigation resulted in the loss of a tax advantage that the appellants would have enjoyed if the deposit had been sufficient to prevent the delay that occurred before the case was ready for trial. Again the loss is one that AP&L could have avoided only by conceding the appellants' demands. Good or bad faith was not a factor.

The third element of damage claimed by the appellants is the loss of a return from profitable investments they might have made if a greater deposit had been available for them to withdraw, with the court's permission. Under our law the landowner is entitled, as part of his just compensation, to a proper rate of interest during the time he is deprived both of the use of the land and of the money representing its value. "Since a constitutional right is involved, the interest rate to be allowed may exceed that specified by statute." *Ark. State Highway Commn.* v. *Vick*, 284 Ark. 372, 682 S.W.2d 731 (1985), and cases there cited. Interest at the market rate, however, is part of the just compensation to which the appellants were entitled and therefore should have been demanded before the entry of judgment. The appellants, having accepted 10% interest in satisfaction of the award, cannot now insist that the amount was insufficient.

The circuit court of appeals allowed the appellants to seek a determination of whether the bad faith claim states a cause of action under state law "and, *if so* [our italics], whether it was a compulsory counterclaim." Since we find that no cause of action exists, we do not reach the second issue. We affirm the trial court's ruling for the reasons we have given. We are not approving or disapproving the other points stated in the trial court's summary judgment and see no reason to explore them. They are not to be treated as binding adjudications.

Affirmed.

PURTLE, J., not participating.