780 F.2d 1422
 54 USLW 2370
 Rondell HARRISON and Sharon Harrison, Appellants,
v.
SPRINGDALE WATER & SEWER COMMISSION, McGoodwin, Williams &
Yates, Inc., Walter Turnbow, Larry Clinkscales and
Harold Henson, Appellees.
 No. 84-2384.
 United States Court of Appeals,
Eighth Circuit.
 Submitted June 14, 1985.
Decided Jan. 7, 1986.
 
 John Lisle, Little Rock, Ark., for appellants.
 Thurston Thompson, Springdale, Ark., for Springdale.
 Kelly Carithers, Fayetteville, Ark., for McGoodwin, etc.
 Before HEANEY, Circuit Judge, FLOYD R. GIBSON, Senior Circuit Judge, and BOWMAN, Circuit Judge.
 BOWMAN, Circuit Judge.
 
 
 1
 Plaintiffs Rondell and Sharon Harrison appeal from the District Court's dismissal of their federal civil rights action under 42 U.S.C. Secs. 1983 & 1985. For the reasons stated below, we hold that the factual allegations in the complaint are sufficient to state a cause of action under section 1983 for infringement of plaintiffs' constitutional right of access to the courts and that such a claim is not barred by res judicata, but that the complaint fails to state a cause of action under section 1985. We therefore reverse in part, affirm in part, and remand this cause to the District Court for further proceedings.
 
 I.
 
 2
 This action arises out of the same factual scenario as Collier v. City of Springdale, 733 F.2d 1311 (8th Cir.), cert. denied, 105 S.Ct. 186 (1984). For purposes of brevity, we simply will refer to Collier for a concise statement of the general factual background. See 733 F.2d at 1312. Drawing on the allegations of the complaint, we will state additional facts pertinent to the present case.
 
 
 3
 The Harrisons own a blueberry farm in Springdale, Arkansas. Their property is located near a creek into which raw sewage from the Bradshaw sewer lift station is discharged whenever the lift station fails to handle the flow of sewage. In July 1980 the lift station failed, resulting in the discharge of raw sewage into the creek. The sewage entered the groundwater and polluted the Harrisons' only sources of irrigation water for their blueberry crop--their well and the creek. A city investigation confirmed that the discharged sewage surfaced in the Harrisons' well, resulting in damage to their blueberry crop.
 
 
 4
 In August 1982 the Harrisons filed suit in the Chancery Court of Washington County, Arkansas against the Springdale Water and Sewer Commission (Commission) for injunctive relief and damages resulting from the sewage discharge.[1] The Commission is a public agency created by the City of Springdale, Arkansas (City), and, pursuant to its authority, operates and maintains the sewer system and the Bradshaw lift station. The Harrisons allege that after they filed their suit the three members of the Commission--Walter Turnbow, Larry Clinkscales, and Harold Henson--conspired to force the Harrisons to sell their property to the City in order to eliminate their complaints regarding sewage discharges. The City made a written offer to purchase the Harrisons' property for $67,500 and threatened to condemn their property if the offer was not accepted. The Harrisons rejected the offer.
 
 
 5
 In March 1983 the Commission filed a counterclaim in the pending chancery court action to condemn the Harrisons' property and recorded a lis pendens. When the Commission filed its counterclaim, it had an engineer's report indicating that the sewage discharge and overflow problem could be resolved without acquiring additional property. It is alleged, however, that the Commissioners conspired with the consulting engineers to fabricate a need to condemn the Harrisons' property. It is further alleged that the Commissioners, at a special meeting on June 6, 1983, adopted the fabricated need, ratified their prior malicious and unlawful acts, and instructed their attorneys to proceed with the condemnation counterclaim.
 
 
 6
 On July 14, 1983 a hearing was held by the chancellor to determine whether the Commission's proposed taking of the Harrisons' property was necessary and whether it was for a public purpose. During the hearing, Commissioner Clinkscales and the Commission's attorney, W.H. Taylor, admitted that the condemnation counterclaim was filed only as a tactical measure to pressure the Harrisons to settle their damage claim against the Commission. The Harrisons also allege that, in furtherance of the conspiracy, an employee of the engineering consulting firm testified falsely at the hearing that the City needed the Harrisons' property for sewer improvements. The chancellor dismissed the counterclaim without prejudice in January 1984 on the ground that there was no public purpose for the taking. Nevertheless, it is alleged, the Commission continued its conspiracy by appealing the chancellor's dismissal.[2] The Harrisons then filed this action on February 15, 1984 in the United States District Court for the Western District of Arkansas.
 
 
 7
 The Harrisons allege that the Commission's actions were an arbitrary and malicious abuse of power and that the individual Commissioners and the engineers conspired to use their power as public officials "to punish those citizens who seek justice in the courts," in violation of 42 U.S.C. Secs. 1983 & 1985. The Harrisons further allege that the City and the Commission are immune from suit under Arkansas law and that their only remedy is a federal civil rights action.
 
 
 8
 The City, after filing its answer to the complaint, filed a motion to dismiss the complaint and for the first time raised the affirmative defense of res judicata as to the Harrisons' conspiracy claim. The City argued that such a claim should have been asserted as a compulsory counterclaim under Arkansas law and that the Harrisons' failure to assert it in the state court action barred them from asserting it in the present federal court action. The City apparently construed the complaint as alleging a conspiracy claim only under section 1985. Likewise, the City apparently construed the complaint to allege a section 1983 claim only for a taking without just compensation, and argued that this Court's recent decision in Collier mandated that the section 1983 claim be dismissed.
 
 
 9
 The District Court agreed with both of the City's contentions and dismissed the complaint with prejudice. The court read the complaint as alleging a section 1983 claim only on the theory of a taking without just compensation, and dismissed that claim on the authority of Collier. As to the section 1985 claim, the court noted that the Harrisons had relied upon a conspiracy theory in defending against the state court condemnation counterclaim, and that such a claim constituted a compulsory counterclaim in the state action under Rule 13 of the Arkansas Rules of Civil Procedure. The court noted further that even if the Harrisons did not become aware of the conspiracy until the evidence was developed in the state action, they should have amended their pleadings to conform to the proof. Since the Harrisons "had a full and fair opportunity to develop this theory in state court," the District Court held that "the result therein is res judicata as to the issues raised in the instant action." Harrison v. Springdale Water and Sewer Commission, No. 84-5018 (W.D.Ark. Sept. 26, 1984) (order granting motion to dismiss).
 
 II.
 
 10
 In reviewing the dismissal of a complaint for failure to state a claim, we follow the "accepted rule" that a complaint should not be dismissed "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 101-02, 2 L.Ed.2d 80 (1957). We must assume the plaintiff's factual allegations to be true and must view them in the light most favorable to the plaintiff. See May v. Commissioner, 752 F.2d 1301, 1303 (8th Cir.1985). Moreover, a complaint should not be dismissed "merely because a plaintiff's allegations do not support the particular legal theory he advances, for the court is under a duty to examine the complaint to determine if the allegations provide for relief on any possible theory." Chapman v. Musich, 726 F.2d 405, 408 (8th Cir.), cert. denied, --- U.S. ----, 105 S.Ct. 325, 83 L.Ed.2d 262 (1984) (quoting Thomas W. Garland, Inc. v. City of St. Louis, 596 F.2d 784, 787 (8th Cir.), cert. denied, 444 U.S. 899, 100 S.Ct. 208, 62 L.Ed.2d 135 (1979)).
 
 
 11
 After reviewing the complaint, we hold that the Harrisons have sufficiently stated a cause of action under section 1983 for infringement of their constitutional right of access to the courts, that they have not stated a cause of action under section 1985, and that the present action is not precluded under Arkansas law by virtue of the prior state court proceeding. We turn now to discuss each of these points.
 
 III.
 A.
 
 12
 "[I]n any Sec. 1983 action the initial inquiry must focus on whether the two essential elements to a Sec. 1983 action are present: (1) whether the conduct complained of was committed by a person acting under color of state law; and (2) whether this conduct deprived a person of rights, privileges or immunities secured by the Constitution or laws of the United States." Parratt v. Taylor, 451 U.S. 527, 535, 101 S.Ct. 1908, 1912, 68 L.Ed.2d 420 (1981).[3]
 
 
 13
 As was true in Collier, "it is clear that the alleged conduct of the City and the Commission satisfies the 'under the color of state law' requirement and therefore we must only decide whether [the Harrisons] ha[ve] been deprived of a right, privilege or immunity secured by the Constitution or laws of the United States." Collier, 733 F.2d at 1313.[4]
 
 
 14
 In their brief the Harrisons concede that the District Court was correct in dismissing their claim for a taking without just compensation on the authority of Collier. In Collier, this Court held that the availability of a state post-taking remedy for compensating property owners whose property had been taken for public use[5] precludes a section 1983 action premised on a "taking" theory. Since the taking was not "without just compensation," the property owner had failed to state a claim under section 1983. Id. at 1316-17.[6]
 
 
 15
 We thus agree with the District Court that the Harrisons' "taking" claim was not cognizable under section 1983. That does not mean, however, that the factual allegations in the complaint fail to state a claim under section 1983 on any other theory. As noted above, the complaint should not be dismissed if the factual allegations state a claim under any theory, even though not one advanced by the plaintiff. A review of the complaint leads us to the conclusion that the Harrisons have sufficiently stated a cause of action under section 1983 for infringement of their constitutional right of access to the courts, in violation of their First Amendment right to petition the government for redress of grievances, as applied to the states through the due process clause of the Fourteenth Amendment.
 
 
 16
 The present case presents a somewhat novel context in which the constitutional right of access to the courts is implicated. Most of the cases involving this right have arisen in the context of a prisoner's right of access to the courts. See, e.g., Bounds v. Smith, 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977); Sanders v. St. Louis County, 724 F.2d 665 (8th Cir.1983); Garland v. Polley, 594 F.2d 1220 (8th Cir.1979); Inmates of the Nebraska Penal and Correctional Complex v. Greenholtz, 436 F.Supp. 432 (D.Neb.1976), aff'd, 567 F.2d 1381 (8th Cir.1977), cert. denied, 439 U.S. 841, 99 S.Ct. 132, 58 L.Ed.2d 140 (1978). The applications of constitutional rights, however, do not remain static. Clear precedent exists indicating that the constitutional right of access extends to the circumstances in the present case.
 
 
 17
 The United States Supreme Court has stated that "[t]he right of access to the courts is indeed but one aspect of the right of petition." California Motor Transport Co. v. Trucking Unlimited, 404 U.S. 508, 510, 92 S.Ct. 609, 611, 30 L.Ed.2d 642 (1972).[7] The Court has noted that the right to petition is "among the most precious of the liberties safeguarded by the Bill of Rights," United Mine Workers v. Illinois State Bar Association, 389 U.S. 217, 222, 88 S.Ct. 353, 356, 19 L.Ed.2d 426 (1967), and that it has "a sanctity and a sanction not permitting dubious intrusions," Thomas v. Collins, 323 U.S. 516, 530, 65 S.Ct. 315, 322, 89 L.Ed. 430 (1945). As an aspect of the First Amendment right to petition, the right of access to the courts shares this "preferred place" in our hierarchy of constitutional freedoms and values.
 
 
 18
 It has been noted in this Circuit that "access to the courts is a fundamental right of every citizen." Greenholtz, 436 F.Supp. at 436.[8] An individual's constitutional right of access to the courts "cannot be impaired, either directly ... or indirectly, by threatening or harassing an [individual] in retaliation for filing lawsuits. It is not necessary that the [individual] succumb entirely or even partially to the threat as long as the threat or retaliatory act was intended to limit the [individual's] right of access." Sanders, 724 F.2d at 666. The cases from this Circuit, as well as from others, make it clear that state officials may not take retaliatory action against an individual designed either to punish him for having exercised his constitutional right to seek judicial relief or to intimidate or chill his exercise of that right in the future. See, e.g., id.; Garland, 594 F.2d at 1223; Hall v. Sutton, 755 F.2d 786, 787 (11th Cir.1985); Matzker v. Herr, 748 F.2d 1142, 1150-51 (7th Cir.1984) ("An act taken in retaliation for the exercise of a constitutionally protected right is actionable under Sec. 1983 even if the act, when taken for a different reason, would have been proper."); Lamar v. Steele, 693 F.2d 559, 562 (5th Cir.1982), cert. denied, 464 U.S. 821, 104 S.Ct. 86, 78 L.Ed.2d 95 (1983); Milhouse v. Carlson, 652 F.2d 371, 374 (3d Cir.1981); Silver v. Cormier, 529 F.2d 161, 163 (10th Cir.1976).[9] An individual is entitled to "free and unhampered access to the courts." United States ex rel. Cleggett v. Pate, 229 F.Supp. 818, 821-22 (N.D.Ill.1964).
 
 
 19
 We believe that the factual allegations in the complaint are sufficient to state a claim under section 1983 for infringement of the Harrisons' constitutional right of access to the courts. The Harrisons have alleged that they filed suit in state court against the Commission and the City, and that the defendants conspired to force them to settle their lawsuit and to sell their property to the City by filing a frivolous condemnation counterclaim. The complaint states that, "One of the defendants, Larry Clinkscales, a commissioner, and the City's attorney, Mr. W.H. Taylor, admitted that the condemnation claim was filed as a tactical move to put pressure on the Harrisons to settle their damage claim against the City. The City had no plan for using the Harrisons' property at the time the counterclaim was filed." Complaint at 4, p 15. The real gist of the Harrisons' complaint is found in their statement that "if public officials are allowed to use that power [of eminent domain] to punish those citizens who seek justice in the courts, then the courts and justice will be denied to many citizens." Id. at 5, p 21. If such allegations are proved at trial, the Harrisons are entitled to recover damages for infringement of their constitutional right of access to the courts.[10]B.
 
 
 20
 In general terms, section 1985 proscribes five different types of conspiracies: (1) conspiracies to interfere with the performance of official duties by federal officers (section 1985(1)); (2) conspiracies to interfere with the administration of justice in federal courts (first clause of section 1985(2)); (3) conspiracies to interfere with the administration of justice in state courts (second clause of section 1985(2)); (4) private conspiracies to deny any person enjoyment of "equal protection of the laws" and "equal privileges and immunities under the laws" (first clause of section 1985(3)); and (5) conspiracies to interfere with the right to support candidates in federal elections (second clause of section 1985(3)). See Kush v. Rutledge, 460 U.S. 719, 724, 103 S.Ct. 1483, 1487, 75 L.Ed.2d 413 (1983).
 
 
 21
 As noted in Kush, three of the five categories--the first, second and fifth--relate to federal institutions and processes. Id. Because the Harrisons have alleged no federal involvement with the conspiracy, any claim under section 1985 must fall within either the third or the fourth category. Moreover, because the Harrisons do not allege that they were members of a class which suffers from invidious discrimination, they have failed to state a claim under the fourth category. See Griffin v. Breckenridge, 403 U.S. 88, 102, 91 S.Ct. 1790, 1798, 29 L.Ed.2d 338 (1971).[11] Thus, we must determine only whether the complaint states a claim under the third category, i.e., the second clause of section 1985(2).[12] This issue is apparently one of first impression in this Circuit.
 
 
 22
 All of the circuits that have addressed the issue have uniformly held that the "equal protection" language of the second clause of section 1985(2) requires an allegation (and proof) of class-based animus. See Bretz v. Kelman, 773 F.2d 1026, 1028-30 (9th Cir.1985); Kimble v. D.J. McDuffy, Inc., 648 F.2d 340, 343-44 (5th Cir.), cert. denied, 454 U.S. 1110, 102 S.Ct. 687, 70 L.Ed.2d 651 (1981); Williams v. St. Joseph Hospital, 629 F.2d 448, 451 (7th Cir.1980); Dacey v. Dorsey, 568 F.2d 275, 277 (2d Cir.), cert. denied, 436 U.S. 906, 98 S.Ct. 2238, 56 L.Ed.2d 405 (1978); Brawer v. Horowitz, 535 F.2d 830, 840 (3d Cir.1976); Hahn v. Sargent, 523 F.2d 461, 469 (1st Cir.1975), cert. denied, 425 U.S. 904, 96 S.Ct. 1495, 47 L.Ed.2d 754 (1976); see also Jones v. United States, 536 F.2d 269, 271 (8th Cir.1976), cert. denied, 429 U.S. 1039, 97 S.Ct. 735, 50 L.Ed.2d 750 (1977) (obiter dictum). We agree with the reasoning and holding of those courts that an allegation of class-based, invidiously discriminatory animus is required to state a claim under the second clause of section 1985(2).
 
 
 23
 The Court in Griffin, in construing the first clause of section 1985(3), stated:
 
 
 24
 The language requiring intent to deprive of equal protection, or equal privileges and immunities, means that there must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action. The conspiracy, in other words, must aim at a deprivation of the equal enjoyment of rights secured by the law to all.
 
 
 25
 403 U.S. at 102, 91 S.Ct. at 1798 (emphasis in original). After examining the legislative history of section 1985, the Court noted that a contrary construction of this clause would have presented serious constitutional problems by creating a "general federal tort law" against any private tortious conspiracy. Id. The Court's reasoning in Griffin under the first clause of section 1985(3) applies equally as well to the second clause of section 1985(2). The "equal protection" language appears in both clauses, and only in these two clauses.[13] As noted in Kush, these two clauses "encompass underlying activity that is not institutionally linked to federal interests and that is usually of primary state concern.... Each of these portions of the statute contains language requiring that the conspirators' actions be motivated by an intent to deprive their victims of the equal protection of the laws." 460 U.S. at 725, 103 S.Ct. at 1487.
 
 
 26
 The Court in Kush explained why class-based animus was not required under the first clause of section 1985(2):
 
 
 27
 First, the scope of the Griffin opinion [was] carefully confined to [the "equal protection" language in the first clause of Sec. 1985(3) ].... Second, the analysis in the Griffin opinion relied heavily on the fact that the sponsors of the 1871 bill added the "equal protection" language in response to objections that the "enormous sweep of the original language" vastly extended federal authority and disrupted state control over private conduct. That legislative background does not apply to portions of the statute that prohibit interference with federal officers, federal courts, or federal elections. Third, and of greatest importance, the statutory language that provides the textual basis for the "class-based, invidiously discriminatory animus" requirement simply does not appear in the portion of the statute that applies to this case.
 
 
 28
 Id. at 726, 103 S.Ct. at 1488 (citations omitted).
 
 
 29
 We agree with the Ninth Circuit that "[t]he reasoning of the Supreme Court in Griffin and Kush compels the conclusion that an allegation of class-based animus is an essential requirement of a claim under the second clause of Sec. 1985(2)." Bretz, 773 F.2d at 1029 (footnote omitted). Because the Harrisons have made no such allegation, they have failed to state a claim under section 1985.[14]
 
 C.
 
 30
 In its Order dismissing the complaint, the District Court noted that the Harrisons had relied upon a conspiracy theory in defending against the Commission's condemnation counterclaim in the prior state court proceeding. The District Court stated that such a claim constituted a compulsory counterclaim in that action under Arkansas Rule 13, and held that the Harrisons failure to assert it in the state action was "res judicata as to the issues raised in the instant action." The court cited as authority for dismissing the complaint on this ground only this Court's decision in Davidson v. Lonoke Production Credit Association, 695 F.2d 1115 (8th Cir.1982) (applying Arkansas law).[15]
 
 
 31
 Section 1738 provides that the "[a]cts, records and judicial proceedings [of any state court] shall have the same full faith and credit in every court within the United States ... as they have by law or usage in the courts of such State ... from which they are taken." 28 U.S.C. Sec. 1738. The Supreme Court has held that section 1738 requires a federal court to apply the same preclusive effect to a prior state court judgment as the courts of that state would apply. The statute applies in section 1983 actions and extends to both issue preclusion (or collateral estoppel), see Allen v. McCurry, 449 U.S. 90, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980), and claim preclusion (or res judicata), see Migra v. Warren City School District Board of Education, 465 U.S. 75, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984). "It has long been established that Sec. 1738 does not allow federal courts to employ their own rules of res judicata in determining the effect of state judgments. Rather, it goes beyond the common law and commands a federal court to accept the rules chosen by the State from which the judgment is taken." Kremer v. Chemical Construction Co., 456 U.S. 461, 481-82, 102 S.Ct. 1883, 1897-98, 72 L.Ed.2d 262 (1982). Thus, it is to Arkansas law to which the District Court should have looked, and to which we look now, to determine the preclusive effect of the prior state court proceeding.
 
 
 32
 The Arkansas Supreme Court has held that the failure to plead a compulsory counterclaim is res judicata as to that claim in a subsequent action between the parties. See May v. Exxon, 256 Ark. 865, 867-68, 512 S.W.2d 11, 12 (1974). Rule 13 of the Arkansas Rules of Civil Procedure provides that "[a] pleading shall state as a [compulsory] counterclaim any claim which, at the time of filing the pleading, the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim.... Ark.R.Civ.P. 13(a) (emphasis added). All other counterclaims "not arising out of the [same] transaction or occurrence" are merely permissive under Rule 13(b). The adoption of Rule 13 abolished the strict compulsory counterclaim rule contained in Ark.Stat.Ann. Sec. 27-1121, which had been construed to make all counterclaims mandatory. See May, 256 Ark. at 867, 512 S.W.2d at 12.
 
 
 33
 Based on our examination of Arkansas case law, we are convinced that the Arkansas courts would not deem the Harrisons' section 1983 claim to have been a compulsory counterclaim in the prior state chancery court proceeding. Therefore, the District Court erred in holding that the present action is barred by principles of res judicata.
 
 
 34
 Perhaps the most analogous case to the present one is Lytle v. Zebold, 235 Ark. 17, 357 S.W.2d 20 (1962) (Lytle II ), a case decided under section 27-1121, the old mandatory counterclaim statute. In Lytle I, dissatisfied beneficiaries of a testamentary trust had unsuccessfully challenged the validity of the trust in a prior proceeding. See Lytle v. Zebold, 227 Ark. 431, 299 S.W.2d 74 (1957) (Lytle I ). Thereafter the executor of the estate sought a ruling that those beneficiaries had forfeited their rights under the will by challenging the validity of the trust in violation of a "no-contest" clause in the will. The beneficiaries contended that the executor should have asserted the forfeiture claim as a compulsory counterclaim in the prior proceeding, and that his failure to do so barred its assertion in the second action. The Arkansas Supreme Court rejected this view.
 
 
 35
 This contention is unsound. It was not until this court had announced its decision in the first proceeding [Lytle I ] that it became definitely known that the [beneficiaries] had made an unsuccessful rather than a successful attack upon the will. Before the final judgment the issue was in doubt. Hence when the executor filed his answer he was not in a position to assert that the [beneficiaries] had violated the prohibition against a will contest. By analogy ... one who is wrongfully and maliciously made a defendant in a civil proceeding does not have to assert a claim for malicious prosecution in that very suit. It is not until the first case has been carried to its conclusion that the cause of action for malicious prosecution can be shown with certainty.
 
 
 36
 235 Ark. at 19-20, 357 S.W.2d at 22.
 
 
 37
 The analogy to the present case is striking. At the time the Harrisons filed their answer to the condemnation counterclaim, there was no certainty that the Commission would fail to demonstrate that its proposed taking of the Harrisons' property was necessary and for a public purpose. Indeed, the Commission attempted to demonstrate such a need in the chancery court and on appeal. Only during the chancery court hearing did the alleged "admissions" of the Commission's motive for filing the counterclaim come to light. By then the issues had been joined. See Ark.R.Civ.P. 13(d) (providing that if a counterclaim "matures or is acquired after all the issues are joined, it may be asserted by the pleader in a separate action"); Valley Forge Insurance Co. v. Carner, 277 Ark. 447, 449, 642 S.W.2d 317, 318 (1982).[16]
 
 
 38
 In Bowen v. Danna, 4 Ark.App. 232, 632 S.W.2d 234 (1982), the plaintiff-purchaser filed a damage suit in circuit court for fraud in the inducement and sale of real estate. The defendant-sellers subsequently filed a separate foreclosure action in the chancery court. In the chancery action the purchaser sought to prove that retaliation for the filing of her fraud suit was the motive for the sellers' commencement of the foreclosure action. The plaintiff presented no evidence as to fraud by the sellers prior to the execution of the mortgage. The chancery court entered a decree of foreclosure. Subsequently the circuit court dismissed the plaintiff's fraud action on the basis of res judicata. The circuit court held, in essence, that the fraud action was a compulsory counterclaim and should have been asserted in the foreclosure action. The Arkansas Court of Appeals disagreed.
 
 
 39
 In this situation, we have essentially two different cases. This case was a suit for fraud and misrepresentation in the inducement and sale of real property. In this case, [the purchaser] sought money damages and a jury trial. In the suit in chancery court, [the sellers] brought a foreclosure action based upon default. [The purchaser] raised the defense of fraud and misrepresentation, but not in the sale of the property as was the subject of the suit in the circuit court, but only as these terms related to the allegations of default. Fraud and misrepresentation in the sale of the property was neither raised in the pleadings nor was it argued in the proceedings in chancery court....
 
 
 40
 Id. at 234-35, 632 S.W.2d at 235 (relying also in part on Rule 13(a)(1) "pending action" exception).
 
 
 41
 As in Bowen, "we have essentially two different cases." The first was a condemnation counterclaim based ostensibly on a perceived public purpose. The second is a section 1983 claim based on an alleged infringement of the constitutional right of access to the courts. It is difficult for us to see how the Harrisons' claim arose out of the same "transaction or occurrence" as the Commission's condemnation counterclaim. Indeed, the two claims did not arise out of the same transaction or occurrence, but rather one was born from the other.
 
 
 42
 We also question whether the Harrisons could have asserted any damage counterclaim in the prior proceeding. "A party's counterclaim is not compulsory if it cannot be asserted in the same proceeding as the opposing party's claim." Edwards v. Arkansas Power & Light Co., 683 F.2d 1149, 1158 (8th Cir.1982) (applying Arkansas law). In Edwards the Court noted that "just compensation is the sole issue for determination in an eminent domain proceeding," id. at 1154, and went on to state that "[o]bviously, if the plaintiffs could not have asserted their action in state court, their failure to do so cannot justify the invocation of the res judicata and compulsory counterclaim doctrines against them here." Id. at 1155. See also Gorchik v. Gorchick, 10 Ark.App. 331, 336-37, 663 S.W.2d 941, 944 (1984) (husband's intentional tort claim for damages not a compulsory counterclaim in wife's divorce action since chancery court had no jurisdiction to adjudicate it under "clean-up doctrine"); cf. Chamberlain v. Newton County, 266 Ark. 516, 519-20, 587 S.W.2d 4, 6 (1979) (chancery court had no jurisdiction over trespass action for damages since equity has no jurisdiction over action to recover unliquidated tort damages).
 
 
 43
 Based on the foregoing authorities, we conclude that under Arkansas law the Harrisons' present section 1983 claim was not a compulsory counterclaim which should have been asserted in the prior chancery court proceeding. The District Court erred in holding to the contrary and in dismissing the complaint on the basis of res judicata.[17]
 
 IV.
 
 44
 We hold that the Harrisons' complaint states a claim under section 1983 for infringement of their constitutional right of access to the courts in violation of their First Amendment right to petition, that the complaint does not state a claim under section 1985, and that their present action is not barred by res judicata for their failure to assert it as a compulsory counterclaim in the prior state chancery court proceeding. In so holding, we express no opinion as to the merits of the Harrisons' section 1983 claim. We merely hold that their complaint is sufficient to survive a motion to dismiss.
 
 
 45
 Reversed in part, affirmed in part, and remanded for further proceedings.
 
 
 
 [1]
 When the parties submitted their briefs in the present appeal, the Harrisons' state chancery court action was still pending
 
 
 [2]
 In an unpublished opinion, the Arkansas Court of Appeals affirmed the chancellor's dismissal of the condemnation counterclaim. The court noted that the Commission's attorney "candidly admitted to the chancellor that the counterclaim was filed as a tactical measure 'to try to stop a lawsuit with the least amount of money we could.' " See Springdale Water and Sewer Department v. Harrison, No. CA 84-156, slip op. at 2 (Ark.Ct.App. Feb. 6, 1985)
 
 
 [3]
 Section 1983 provides, in pertinent part, as follows:
 Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law....
 42 U.S.C. Sec. 1983.
 
 
 [4]
 The allegations in the complaint of a conspiracy are sufficient to implicate defendant McGoodwin, Williams and Yates, Inc. (the consulting engineers), even though it is considered a "private person." The Supreme Court has held that the involvement of state officials in a conspiracy with private persons "plainly provides the state action essential to show a direct violation" of a person's federal constitutional rights. Adickes v. S.H. Kress & Co., 398 U.S. 144, 152, 90 S.Ct. 1598, 1605, 26 L.Ed.2d 142 (1970)
 Moreover, a private party involved in such a conspiracy, even though not an official of the State, can be liable under Sec. 1983. "Private persons, jointly engaged with state officials in the prohibited action, are acting 'under color' of law for purposes of the statute. To act 'under color' of law does not require that the accused be an officer of the State. It is enough that he is a willful participant in joint activity with the State or its agents."
 Id. (quoting United States v. Price, 383 U.S. 787, 794, 86 S.Ct. 1152, 1156, 16 L.Ed.2d 267 (1966)). See also note 14, infra at 1430.
 
 
 [5]
 See Ark.Stat.Ann. Sec. 35-101, reprinted in Collier, 733 F.2d at 1316 n. 10
 
 
 [6]
 In Collier this Court, while recognizing that Parratt v. Taylor, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981) involved a procedural due process claim, noted that the Parratt analysis was equally applicable to claims alleging a taking without just compensation. See Collier, 733 F.2d at 1313-14 n. 4. The United States Supreme Court recently adopted this same analysis for "taking" claims. See Williamson County Regional Planning Commission v. Hamilton Bank, --- U.S. ----, 105 S.Ct. 3108, 3121-22 & nn. 13-14, 87 L.Ed.2d 126 (1985)
 
 
 [7]
 While the Supreme Court and other federal courts have uniformly recognized a constitutional right of access to the courts, the source of that right has not always been consistently and clearly defined. See, e.g., Bounds v. Smith, 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977); Wolff v. McDonnell, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974) (due process); Douglas v. California, 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963) (equal protection); Hilliard v. Board of Pardons and Paroles, 759 F.2d 1190 (5th Cir.1985) (equal protection). We believe that it is most appropriate, under the circumstances of the present case, to view the right of access to the courts as an aspect of the First Amendment right to petition
 
 
 [8]
 In Greenholtz, prison inmates challenged a Nebraska Board of Parole policy of not considering an otherwise eligible inmate for discretionary parole if, at the time his parole status was reviewed, he had any legal actions pending in the courts. This Court affirmed the district court's holding that such a policy obstructed the inmates' constitutional right of access to the courts. The district court stated that the Board's policy "punished those inmates who had sought relief in the courts and discouraged other inmates from seeking relief in the courts." 436 F.Supp. at 437. In effect, the policy served as retaliatory punishment for those who had exercised their constitutional rights and "chilled" others from so exercising theirs
 
 
 [9]
 In Silver, an agency official threatened to withhold money admittedly due and owing the plaintiffs if they instituted legal proceedings against the agency on an unrelated and independent matter. The Tenth Circuit, after stating that the "right of access to the courts cannot be infringed upon or burdened," held that the official's threat burdened and chilled the plaintiffs' right of access even if the threat was "not actually effective." 529 F.2d at 163
 
 
 [10]
 Since the Harrisons have alleged a violation of a substantive constitutional right independent of the Fourteenth Amendment due process clause simpliciter, the existence of an adequate state remedy under the Parratt analysis is irrelevant. See Parratt, 451 U.S. at 536, 101 S.Ct. at 1913 (distinguishing cases in which substantive constitutional right involved); see also Hudson v. Palmer, 468 U.S. 517, 104 S.Ct. 3194, 3208 n. 4 & 3210 n. 9, 82 L.Ed.2d 393 (1984) (Stevens, J., concurring in part and dissenting in part). Therefore, we need not inquire whether Arkansas law provides a remedy and, if it does, whether the Arkansas statute granting tort immunity to "municipal corporations ... special improvement districts, and all other political subdivisions of the State," Ark.Stat.Ann. Sec. 12-2901, "makes an available state remedy inadequate" under the Parratt analysis, an issue expressly left open in Collier. See 733 F.2d at 1317. Moreover, since the Harrisons have stated a claim on a right of access theory, we need not decide whether, under the facts of this case, there is a substantive due process right to be free from arbitrary and capricious state action, an issue expressly left open in Edwards v. Arkansas Power & Light Co., 683 F.2d 1149, 1155-56 (8th Cir.1982) (remanded to district court with directions to abstain pending decision by state court on existence of cause of action for bad faith under Arkansas law). See Edwards v. Arkansas Power & Light Co., 287 Ark. 403, 700 S.W.2d 52 (1985) (holding that there is no cause of action in tort under Arkansas law for a condemnor's bad faith)
 
 
 [11]
 In Griffin, the Supreme Court held that the language of Sec. 1985(3) requiring an intent to deprive the victim of "equal protection of the laws" or "equal privileges and immunities under the laws" is limited to cases where there is "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." 403 U.S. at 102, 91 S.Ct. at 1798. The "class-based animus" requirement was limited to the first clause of Sec. 1985(3) in Kush, in which the Court held that Griffin did not apply to conspiracies to intimidate witnesses in federal courts under the first clause of Sec. 1985(2). Kush, 460 U.S. at 726, 103 S.Ct. at 1488
 
 
 [12]
 The second clause of Sec. 1985(2) provides a cause of action if:
 two or more persons conspire for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any State ... with intent to deny to any citizen the equal protection of the laws, or to injure him or his property for lawfully enforcing, or attempting to enforce, the right of any person, or class of persons, to the equal protection of the laws[.]
 42 U.S.C. Sec. 1985(2).
 
 
 [13]
 Section 1985 was originally enacted as Sec. 2 of the Civil Rights Act of 1871, 17 Stat. 13. In reviewing the legislative history of Sec. 2 in Griffin, the Court noted that the "equal protection" language was added as an amendment to limit the "enormous sweep of the orginal language." 403 U.S. at 100, 91 S.Ct. at 1797. The limiting amendment sought to avoid objections that the bill unconstitutionally intruded upon matters exclusively within the states' authority. The Court stated that it could avoid any constitutional problems "by requiring, as an element of the cause of action, the kind of invidiously discriminatory motivation stressed by the sponsors of the limiting amendment." Id. at 102. Those same constitutional problems are avoided by a similar construction of the second clause of Sec. 1985(2)
 
 
 [14]
 Our holding that the Harrisons have failed to state a claim under Sec. 1985 does not mean that they could not show a conspiracy under Sec. 1983. Proof of a conspiracy, however, is not an indispensable requirement under Sec. 1983 as it is under Sec. 1985. It is merely a mechanism by which to establish the necessary state action, see Adickes v. S.H. Kress & Co., 398 U.S. 144, 152, 90 S.Ct. 1598, 1605, 26 L.Ed.2d 142 (1970) and note 4, supra at 1426, or to impose liability upon one defendant for the acts of the other(s) performed in furtherance of the conspiracy, see Villanueva v. McInnis, 723 F.2d 414, 418 (5th Cir.1984). "The gist of the [Sec. 1983] cause of action is the deprivation and not the conspiracy." Lesser v. Braniff Airways, Inc., 518 F.2d 538, 540 n. 2 (7th Cir.1975)
 
 
 [15]
 In Davidson, this Court was required to determine whether Arkansas law recognized an exception to the general rule requiring mutuality of estoppel. That case, however, involved only the offensive use of issue preclusion (or collateral estoppel), and not the application of claim preclusion (or res judicata), as in the present case. Under the doctrine of res judicata, a final judgment on the merits of an action precludes the parties from relitigating matters that were or could have been raised in that action. Under the doctrine of collateral estoppel, once a court has actually decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of that same issue in a subsequent suit on a different cause of action involving a party to the first action. See Allen v. McCurry, 449 U.S. 90, 94, 101 S.Ct. 411, 414, 66 L.Ed.2d 308 (1980). Since the District Court dismissed the Harrisons' claim (as contrasted with merely granting summary judgment on and precluding relitigation of an issue previously decided), this case clearly does not invoke principles of collateral estoppel. The District Court and defendants seem to have confused the issues as well as the terminology. The precise issue, it seems to us, is whether the Harrisons were required, under Ark.R.Civ.P. 13(a), to assert their present Sec. 1983 claim as a compulsory counterclaim in the prior state court action. If so, they are barred by principles of res judicata, as construed by the Arkansas appellate courts, from asserting their claim here
 
 
 [16]
 At oral argument the City's attorney conceded that the Harrisons' Sec. 1983 claim matured or was acquired after the issues already had been joined. He contended, however, that since the language in Arkansas Rule 13(d) providing that a subsequently acquired claim "may be asserted ... in a separate action" is not present in the federal counterpart, Fed.R.Civ.P. 13(e), the Harrisons were required to assert their Sec. 1983 claim as a separate action in state court, and not in a federal forum. We find this argument to be totally without merit. The City cites to no Arkansas appellate case, and our research discloses none, construing its rule in that manner. Although the Supreme Court has noted that Sec. 1983 claims may be brought in state court, see Martinez v. California, 444 U.S. 277, 283 n. 7, 100 S.Ct. 553, 558 n. 7, 62 L.Ed.2d 481 (1980), and although Arkansas has in fact permitted such claims to be brought in its state courts, see Beaumont v. Robinson, 282 Ark. 181, 668 S.W.2d 514 (1984), it has never been held that Sec. 1983 claims must be brought in state courts on the basis of a state procedural rule permitting such claims to be brought "in a separate action." Moreover, we have serious doubts whether such a rule would be constitutional. In any event, the only possible basis on which the Harrisons would be barred from asserting their Sec. 1983 claim in the present federal action is the application of res judicata under Arkansas law
 
 
 [17]
 Though we generally accord deference to the district court's interpretation of state law, we must reverse if we find that the district court "has not correctly ascertained and applied local law". Hazen v. Pasley, 768 F.2d 226, 228 (8th Cir.1985). We find that to be the case here