993 F.2d 1547
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Terry TRYON, Plaintiff-Appellant,
v.
Alice MCDONALD, Defendant-Appellee.
 No. 92-5789.
 United States Court of Appeals, Sixth Circuit.
 May 11, 1993.
 
 Before GUY and NELSON, Circuit Judges, and WELLFORD, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Plaintiff, Terry Tryon, appeals from a grant of summary judgment in this § 1983 suit against Alice McDonald, the former Kentucky Superintendent of Public Instruction. Tryon alleges that, as a result of a letter sent by the Kentucky Department of Education's general counsel, McDonald refused to consider him for positions within the Kentucky Department of Education unless he dropped a state libel suit against another individual in the department. The district court determined that McDonald had no knowledge of the letter or the litigation which gave rise to it, and therefore to impose liability would require improper reliance on theories of respondeat superior. We affirm.
 
 I.
 
 2
 The Kentucky Department of Education employed Tryon as a vocational carpentry instructor at various state vocational schools from March 1977 until January 1987. In 1986, a regional administrator, Bill Evans, had recommended that Tryon be laid off because of an unsatisfactory performance evaluation. Tryon appealed this decision to the Kentucky Personnel Board, and it ordered his reinstatement either to his old position or to a similar position within the department. As a result, Tryon became an administrative assistant to Evans, the man responsible for his original layoff. Fearing that Evans was merely attempting to get Tryon into a position from which Evans could once again lay him off, Tryon requested and received an unpaid leave of absence in January 1987, which was to last until January 1, 1988.
 
 
 3
 Meanwhile, Tryon sued Evans for libel in Kentucky state court because of Evans' alleged untrue report about Tryon's performance as a carpentry instructor. During settlement negotiations of the state action, J. Gary Bale, General Counsel of the Office of Legal Services, sent a letter to Evans' attorney, which stated:
 
 
 4
 This department is prepared to offer a proposed settlement of the subject litigation, which I feel must be run through you since you are the only attorney of record in the referenced litigation on behalf of our employee, Mr. Evans.
 
 
 5
 Basically, Mr. Tryon is currently on approved leave without pay from his employment with the Department of Education through the end of this calendar year. He, however, has requested that he be allowed to come back to work, and we do not feel we are under any legal obligation to allow him to do such, at least not prior to January 1, 1988.
 
 
 6
 We, nevertheless, would be willing to put Mr. Tryon back to work, effective as soon as such can be worked out, at some appropriate position in the Louisville vocational region, which position would be of comparable grade and pay to the one he held prior to going on leave (such as, a position to teach carpentry at Luther Luckett Correctional Center which could be made available for Mr. Tryon). Such would be in consideration of Mr. Tryon's dropping his libel lawsuit against Mr. Evans. Any such agreement would, of course, free us of our commitment to furnish legal counsel for Mr. Evans.
 
 
 7
 (App. 34.) Evans' counsel then sent a letter to Tryon's counsel, which restated the Kentucky Department of Education's stance on the matter and its proposed settlement.
 
 
 8
 Tryon then filed this suit in federal court against Evans and McDonald, alleging that the Department of Education's letter conditioning Tryon's opportunity for reemployment upon the dismissal of his state action violated his First Amendment right of access to the courts by chilling the exercise of that right. Further, Tryon complained that, although "agents and employees" of McDonald finally employed him in 1989, they continually refused to consider him for numerous positions because of his ongoing state libel suit. Both Evans and McDonald sought to dismiss the claim pursuant to Federal Rule of Civil Procedure 12(b)(6), but the district court denied the motion after concluding that the complaint stated a cause of action for infringement of Tryon's constitutional right of access to the courts. The court also held that the cause of action was only proper against the defendants in their individual capacities, because a § 1983 action against them in their official capacities was barred by the Eleventh Amendment. Subsequently, Evans was dismissed from the federal suit as part of a settlement of Tryon's state court libel action. The parties then consented to proceed before a magistrate judge, who granted defendant's motion for summary judgment. This appeal followed.
 
 II.
 
 9
 Under 42 U.S.C. § 1983, a plaintiff must allege (1) that he was deprived of a right secured by the Constitution or laws of the United States, and (2) that the deprivation was caused by a person while acting under color of state law. Brotherton v. Cleveland, 923 F.2d 477, 479 (6th Cir.1991). Absent either element, a claim will not be stated.
 
 
 10
 The trial court concluded that defendant did not deprive Tryon of any constitutional rights, because defendant had no knowledge of Tryon's state libel action or of the letter sent by Bale. On appeal, Tryon argues first that the theory of respondeat superior should apply to this case because McDonald and Bale had an attorney-client relationship, which is much closer than the connection between an average employer and employee. Next, Tryon contends that attorney Bale had final policymaking authority in this area, and therefore his acts should be attributed to McDonald. We reject both of Tryon's arguments.
 
 
 11
 At the outset, we note that Tryon did not sue the public official directly involved in this action, J. Gary Bale. Instead, Tryon sued McDonald in her individual capacity. Tryon failed to demonstrate that McDonald was the cause of his alleged deprivation, and he admitted that she had no knowledge of the proceedings or of Bale's letter. Rather, his § 1983 action was premised on a supervisor theory of liability.
 
 
 12
 Supervisory liability under § 1983 arises in large part from the Supreme Court's decision in Rizzo v. Goode, 423 U.S. 362 (1976). In Rizzo, the Court found that the mayor, city managing director, and police commissioner were not liable for constitutional violations of the city's police officers because the plaintiff had failed to show an "affirmative link between the occurrence of the various incidents of police misconduct and the adoption of any plan or policy by [the defendants]--express or otherwise--showing their authorization or approval of such misconduct." Id. at 371. Rizzo involved equitable relief in the form of a broad injunction against future conduct, but we have held that the same standard applies to cases involving monetary relief against officials acting in their individual capacities. Hays v. Jefferson County, Ky., 668 F.2d 869, 874 (6th Cir.), cert. denied, 459 U.S. 833 (1982). For supervisory liability to attach, the official must either have "encouraged the specific incident of misconduct or in some other way directly participated in it. At a minimum a plaintiff must show that the official at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers." Id. Absent such a showing, "a failure of a supervisory official to supervise, control, or train the offending individual officers is not actionable." Id. No claim is made in this case that McDonald participated in or encouraged Bale to write his allegedly actionable letter. Nor is there an assertion that McDonald implicitly authorized, approved, or knowingly acquiesced in Bale's allegedly unconstitutional conduct.
 
 
 13
 As we have stated previously, "[t]he law is clear that liability of supervisory personnel must be based on more than merely the right to control employees." Id. at 872. To base § 1983 liability on such a theory would allow damages on a respondeat superior basis, which the Supreme Court explicitly rejected in Monell v. New York City Department of Social Services, 436 U.S. 658 (1978). Indeed, Tryon recognizes this very fact, but contends that something about the attorney-client relationship is different for purposes of § 1983 liability. Notwithstanding Tryon's argument, we are not convinced that the McDonald-Bale relationship is different in ways that matter for purposes of imposing respondeat superior liability under § 1983. Importantly, it is not altogether clear that McDonald and Bale even had an attorney-client relationship. In Bale's letter, he does not identify himself as McDonald's attorney; rather, his title is "General Counsel, Office of Legal Services." Although acting on behalf of the Department of Education's interests--and therefore McDonald's interests--we agree with defendant that Bale's client is actually the Commonwealth of Kentucky and not McDonald. In addition, imputing liability to McDonald would predicate liability on a failure to adequately "control" her attorney. But, without a finding that McDonald acquiesced in her attorney's conduct, imposition of liability on her simply because she allegedly held the position of "client" would violate the very tenets of Monell.
 
 
 14
 Next, Tryon argues that Bale was a policymaker for the Department of Education and therefore his conduct should be attributed to McDonald. Even if we were to accept Tryon's characterization of Bale's authority, this would aid Tryon only in a § 1983 action against the state. Such a suit, unless for injunctive relief, would not lie under § 1983. See Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989) (states are not "persons" within meaning of § 1983 and "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against ... the State itself"). Thus, we decline to consider further whether Bale's actions constituted those of a final policymaking authority, because the resolution of that issue matters not to Tryon's claims against McDonald in her individual capacity.
 
 
 15
 Finally, although neither party specifically raised the issue, we note our reservations about the trial court's original conclusion that Tryon stated a cause of action in this matter. The court stated that the allegations in Tryon's complaint were sufficient "in that the letter attached [to the complaint] as an exhibit states that [Tryon] would not be considered for reemployment before January of 1988 unless the libel action is dismissed." In support of its decision, the court then cited Harrison v. Springdale Water & Sewer Commission, 780 F.2d 1422 (8th Cir.1986), which involved allegations of a pattern of harassment and retaliation and the threat of eminent domain against a couple who had sued an Arkansas water commission for its alleged pollution of a local stream.
 
 
 16
 We read attorney Bale's letter differently than did the trial court, as the letter seems to us to simply offer a good faith settlement of Tryon's state libel action. Moreover, it contained no hints of retaliation or exploitation of state power to punish Tryon for his use of the state courts. Thus, standing alone, such offers of settlement should not be the basis of § 1983 suits against state officers.
 
 
 17
 AFFIRMED.